## MEREDITH v. RICHARDSON & O'NEAL.

1. Where a plaintiff is entitled to two modes of redress, and elects to bring assumpsit, the defendant may urge any defence peculiar to that action, although the same defence could not have been insisted on if the cther action had been pursued.

2. When the goods of a party have been seized and sold under an execution issued from the clerk's office, on a bond, defective as a statutory forthcoming bond, the act of issuing the execution, is the act of the clerk, and not of the plaintiff—therefore no action of trespass will lie against the latter.

3. When the action is for money had and received, to the plaintiffs use, the defendant may show any matter of defence growing out of, or connected with, the same transaction, which shows the plaintiff is not entitled *ex equo et bono* to recover—therefore, if a bond, defective as a statutory forthcoming bond, is good as a common law bond, and the obligee, on its breach

is entitled to recover the full amount received by him, on an execution up-
on it, he may retain, on showing these facts, against an action for money
had and received, although the execution on the bond has been quashed.

4. A bond reciting the issuance of an execution, against L, when in point of
fact, it issues against him and others, is good as a common law bond, al-
though the amount for which the execution issues is not recited therein;
and the obligor is estopped from denying the levy recited, as well as the
property of the defendant in the goods.

5. The supposed variance in omitting to set out the names of all the defend-
ants in the bond, and the omission to conform the sums recited to the exe-
cution, are matters which may be supplied by parol evidence.

Writ of Error from the Circuit Court of Sumter.

Assumpsit, by Meredith, as the executor of the last will
of James E. Jones, against Richardson & O'Neal, for money
paid by his testator for them, and for money had and received
to his use.

Among other pleas, the defendants pleaded as follows, viz :
*Actio non*, because they say, that on the 3d of April, 1839,
they, in the circuit court of Sumter county, Alabama, recov-
ered a judgment against John Lunsford and William H. Car-
ter, for $2,191 86, which said judgment, on the 6th January,
1840, was affirmed in the supreme court, with ten per cent.
damages, besides interest and costs of suit, against said Luns-
ford and Carter, and also against Landon J. Morris, and An-
drew J. Stephens, on which judgment, so affirmed, an execu-
tion issued on the 13th of March, 1840, against the goods,
&c. of the said Lunsford, Carter, Morris, and Stephens, and
was levied, whilst the same was in full force and effect, to
wit: on the 26th March, 1840, on one hundred bales of cot-
ton, as the property of said Lunsford, by the sheriff of said
county, in said county. And the said Lunsford, then
and there, together with one P. B. Whiting, and James E.
Jones, executed a bond for the delivery of said cotton, to the
said sheriff of Sumter county, on the first Monday of April,
1840, and in consideration of the said bond, the said sheriff
re-delivered said cotton to said Lunsford. And the defend-
ants aver, that the said cotton was not redelivered to said

sheriff, in compliance with said bond, and that an execution issued on said bond, as a forfeited forthcoming bond, on the 10th of April, 1840, against the said Lunsford, Whiting, and Jones, and that the same was not, in whole or in part satisfied. And the defendants aver, that in the lifetime of the said James E. Jones, to wit: on the 27th of October, 1840, after the return, an alias execution was issued against the said Lunsford, Whiting, and Jones, and whilst in full force and effect, was satisfied out of property of the said plaintiffs testator. And the defendants aver, that at a term of the circuit court for said county, to wit: on the .... day of ......, 1841, a motion was made on behalf of said Lunsford, to quash said bond, which motion was refused by the said circuit court, but afterwards reversed for mere irregularity, by the supreme court of the State of Alabama, at the June term, 1843, when said bond was held insufficient to authorize an execution thereon. Whereupon the said plaintiff commenced his aforesaid action, and all of said plaintiffs' supposed demands, in his said declaration, are for money collected by virtue of said execution, issued as an alias on said bond, which said sum of money, at the time the same was collected, was justly due and owing to the said defendants, in consideration of the redelivery of the said cotton to the said Lunsford, upon the execution of said bond, said cotton being of the value of $3000 and the said bond being in full force and effect as a common law bond, and this they are ready, &c.

The plaintiff demurred to this plea, and his demurrer being ouerruled, he rejoined that his testator never made any bond conditioned to return any cotton levied on by the execution mentioned in the plea.

At the trial on the issue thus formed, as on the general and other issues, the defendant offered in evidence an execution issued at the suit of the defendants, reciting the recovery of a judgment by them at the April term, 1839, against Lunsford and Carter, for the sum $2,191 86, besides costs; that this judgment was stayed by writ of error, and superseded—and its affirmance in the supreme court, with ten per cent. damages. It then commanded the sheriff to levy the proper amounts of the goods, &c. of Lunsford and Carter, and also of the goods, &c. of Morris and Stephens, their sureties in the

writ of error bond. This execution was issued the 16th March, 1840, and returned by the sheriff as levied on one hundred bales of cotton, for which bond was taken, and forfeited, 1st Monday of April, 1840.

The defendants then gave in evidence a bond executed by Lunsford, P. B. Whiting, and James E. Jones, payable to the defendants, in the penalty of $5480, dated the 26th March, 1840. The condition of this bond recites the issuance of an execution in favor of Richardson & O'Neal, against Lunsford, for the sum of $2743, including debt, damages, and costs—that it issued the 16th of March, 1840, and had been levied on one hundred bales of cotton, as the property of Lunsford, to satisfy it. It then provided, that if Lunsford should deliver the said property to Jesse Womack, sheriff of the county aforesaid, on the first Monday of April, 1840, the time appointed for the sale thereof, the bond was to be void.

The plaintiff objected to the introduction of this bond, because it was variant from the execution. The defendants then called a witness, and offered by him to identify the bond with the execution, by showing it was taken by him on the levy aforesaid, and was taken as a forthcoming bond on said execution, admitting they did not expect to prove the bond was variant from what it was intended to be, by reason of any fraud. The plaintiff objected to this evidence, but the court allowed the evidence and admitted the bond.

The witness then testified that he had the execution, as deputy sheriff, entered the levy, and took the bond as a forthcoming bond on said levy—that the bond was intended to apply to the execution. He was then asked by defendants, if, on making that levy, he released the cotton, to which he replied he never saw the cotton, and did not know that Lunsford had any cotton—that he had the execution, and was desirous to make the money, and called on Lunsford to give a delivery bond—that thereupon the levy was entered and the bond executed by the obligors—that the cotton was not forthcoming, and that one hundred bales of cotton was worth the demand required to be made by the execution. On examination by plaintiff, the witness said there was no express understanding with Jones, or any other party to the bond, that it was given on said execution, and he did not know the sureties ever

saw the execution—nothing passed between them about the
execution, nor had he any authority from the defendants to
take the bond, or to accept for them a delivery of it, but he
took it only as an officer, and under the statute requiring
sheriffs to take delivery bonds—he never delivered the bond
to defendants, but on the cotton not being delivered to him,
he returned the bond "forfeited," with the execution, to the
clerk's office.

The plaintiff also inquired of the witness, whether he had
not other executions in favor of different plaintiffs against
the same defendants in execution, in his hands, at the time of
the levy.    To this the defendant objected, and the court call-
ed on the plaintiff to state his object in offering the proof, and
was informed, it was to show that the witness had other and
older executions, which would have consumed the cotton, if
delivered, so that the defendants would not have made any
thing if the cotton had been delivered.    The court ruled the
evidence inadmissible.

On this state of proof the plaintiff insisted, there was no
consideration to support the bond proved, and no delivery of
it, but the court charged the jury, that the bond was a good
common law obligation ; that a sufficient consideration was
proved, as well as a sufficient delivery.

The plaintiff excepted to the charges of the court, as well
as to its several rulings with respect to the evidence, and they
are now assigned as error.

A. F. HOPKINS, and R. H. SMITH, for the plaintiffs in error,
insisted—

1. That the forthcoming bond being quashed, the execu-
tion issued upon it, became irregular and void from the be-
ginning.    [Roe v. Milton, 2 Wils. 385 ; Perkins v. Proctor,
3 Ib. 341 ; Woodcock v. Bennett, 1 Cowen, 719, 735 ; Read
v. Markle, 3 John. 523 ; Capel v. Heffer, 2 S. & R. 58.]
The sueing out this execution was the act of the party, and
not the erroneous judgment of a court ; therefore the money
was collected by a void authority.    [Parsons v. Lloyd, 3
Wils. 345.]    It was so entirely void, that an action of tres-
pass would lie.    [Read v. Markle, 3 John. 516 ; 3 Wils. 345;
2 Ib. 385 ; 1 Strange, 509 : 2 Ib. 993.]

Meredith v. Richardson & O'Neal.

2. There are cases where money has been collected on an erroneous judgment, in which the party is permitted to retain the money, because it is equitably due, but the rule does not apply when the party sues out void process, or is guilty of a trespass in collecting the money. The party may waive the *tort*, and sue for the money, and when he does so, the wrongdoer has no equity to resist the demand in one case more than the other. [Peck v. Holcomb, 3 Porter, 334; 1 B. & A. 241.]

3. A court of law has no authority to correct the alledged mistake in the bond, and make it conform to the supposed intention of the parties. Such jurisdiction belongs to a court of equity only, and can be exercised alone when the facts going to show the mistake are directly put in issue. [1 Story Eq. 164 to 169; Gillespie v. Moon, 2 Johns. Ch. 609; Lyman v. U. Ins. Co. Ib. 630; 6 Vesey, 332; Paysant v. Ware, 1 Ala. Rep. 165; Dozier v. Duffee, 3 Ib. 324.] A court of chancery would not make the correction, on evidence like that in this case. [1 Story Eq. 178, and cases there cited.] Indeed no mistake is shown here. [1 Peters, 114.]

4. The testimony of the deputy sheriff was inadmissible to show the mistake. [Coleman v. Crumpton, 2 Dev. 508; Phil. Ev. 555, 561, 567; King v. Baldwin, 2 John. Ch. 557; McCoy v. Moss, 5 Porter, 88; Mead v. Steger, Ib. 498; Paysant v. Ware, 1 Ala. Rep. 161; Dozier v. Duffee, Ib. 320; Beard v. White, Ib. 436; Litchfield v. Falconer, 2 Ib. 280.]

5. The defendants, under the facts disclosed, do not make out à case on which they could recover at law. [Dupuy v. Roebuck, 7 Ala Rep. 484; Westmoreland v. Davis, 1 Ib. 301.] Consequently they have no right to retain the money.

MURPHY and METCALF, for the defendants in error argued—

1. The plea is good, as it shows the money was justly due and owing when collected, but beyond this, it shows that it is a debt collectable at law. [Stewart v. Conner, 9 Ala. R. 803; Dupuy v. Roebuck, 7 Ala. Rep. 484; Duncan v. Ware, 5 S. & P. 119; Green v. Stone, 1 H. & J. 405.]

105

2. The bond is available to the defendants as a common law bond, although it may be bad as a statutory bond. The effect of the bond was to suspend the execution, and the parties contracted to deliver the cotton at a certain day. Here is a sufficient contract and consideration. [4 Ala. Rep. 279; 4 H. & M. 180; 3 Ala. R. 636.]

3. Conceding that the plaintiff might have elected to sue in trespass, he has not done so, but has waived the tort by bringing assumpsit. This action is always open to an equitable defence. [1 Dallas, 222; 1 Blackf. 181; Chit. Pl. 93, 94; 1 Marsh. 552.]

4. The decisions are numerous and conclusive, that although the statute may require a bond in one form, and it is taken in another, it is yet good if not prohibited. [2 Porter, 493; 6 Ib. 335; 8 Ala. R. 466.]

5. But even if no bond had been given, but the cotton was delivered to Lunsford, on the mere promise by Jones, that it should be forthcoming on the sale day, such a promise would warrant the defence. [Foster v. Clark, 19 Pick. 329.]

6. The party is estopped by his bond from saying that no levy was made, or cotton redelivered, to the principal. [Dupre v. Bank of Limestone, 1 J. J. M. 380; 4 Black. 437; 6 John. Ch. 302.] Indeed it may well be questioned whether the doctrine of estoppel does not prevent the party from showing any variance between the execution and the bond. [Stockton v. Turner, 7 J. J. M. 192; Thampson v. Buchanan, 2 Ib. 420; 1 Phil. Ev. 85.]

7. There is indeed no variance, as the execution was against Lunsford, although against others likewise, but if it is considered as variant, it is nothing more than a misrecital, which may be supplied or corrected by parol. [5 Cowen, 530; Jackson v. Pratt, 10 John. 380. Hob. 130; Co. Litt· 352, b; 7 Monroe, 386; 3 Ohio, 272.]

GOLDTHWAITE, J.—1. The bond, by means of which the defendants in this cause claim to retain the money collected by them from the plaintiff, was declared defective as a statutory forthcoming bond, in Lunsford v. Richardson, 5 Ala. Rep. 618, and the principal question now is, can it be available as a common law obligation, against the plaintiff's

Meredith v. Richardson & O'Neal.

suit to recover back the money made by the sale of the property of his testator, on the void or irregular execution. In our judgment, it is not very material to inquire, whether the execution on the bond was absolutely void, or only irregular, as the form of action selected is assumpsit. There are many cases in which the plaintiff has the privilege of electing the form of action to redress his supposed injury, but when one is chosen, as preferable to others, it is always open to the defences which are peculiar to that form of action. A strong illustration of this rule is found in the case of Smith v. Lewis, 4 D. & E. 211, where a bankrupt on the eve of his bankruptcy, had fraudulontly delivered goods to one of his creditors, and his assignees brought assumpsit for their value, instead of trover, as they might have done. It was held the creditor was entitled to a set off, although this would not have been allowed if the other form of action had been pursued.

2. Although not material in this view to be decided, it will perhaps be more satisfactory to know, that the party has not misconceived his action. In point of law, the plaintiff has no act or part in the issuing of execution on a forthcoming bond. The statute makes it the duty of the sheriff, within ten days after the forfeiture of the bond, to return it with the execution, to the clerk of the court, and the latter is required, within five days thereafter, to issue an execution against the obligors. [Dig. 215, § 73.]

There would be a peculiar hardship in holding the plaintiff liable as a trespasser, for an act in which he never participated, and of which, in the majority of instances, he is entirely ignorant. We can perceive no sound distinction between the effect of an office, or statutory judgment, and one rendered in the due course of the courts. In the one instance the clerk is the officer upon whom the law casts the onus of determining the existence of the fact which warrants the issuance of the execution, and in the other the consideration is given by the court. If either the one or the other commits an error of judgment, the laws afford ample opportunities for its revision, and the prevention of any injury from it.

3. It is supposed however, that the plea sustained as good, is defective, because it insists, in effect, on the right to re-

tain the money, as equitably belonging to the defendants, instead of presenting their claim as a set of, and our decision in Dupuy v. Roebuck, 7 Ala. Rep. 484, is chiefly relied on to sustain this position. What is said there is in strict conformity with the universally admitted principle, that any defence is admissible to justify the defendant's retention of the money claimed to have been received to the plaintiff's use, which will show the latter is not entitled *ex equo et bono* to recover. [Moses v. McFarlane, 2 Burr. 1011.] But we go further, and show that this defence, under the general issue, must grow out of, or be connected with, the same transaction, or subject matter, in which the money was received— otherwise the principle then invoked would let in a set off in all cases, without pleading it—but we there expressly rested our judgment, that the record did not disclose a state of facts which would warrant a recovery for the defendant, if he had been suing upon the covenants under which he claimed the right to retain the money collected on the reversed judgment. Here, however, the facts are entirely different, because, if the bond is of any validity, enough is asserted to show the defendant's right to recover upon it the precise sum they have received.

4. And this brings us to what we have already said is the principal question—the validity of the bond as a common law obligation. In its common aspect this cannot be considered an open question, in this court, after the elaborate examination it received in Whitsett v. Womack, 8 Ala. Rep. 466. We there held, that a bond taken by a sheriff was neither void or voidable for want of conformity with the one authorized by the statute, there being no prohibition of any other form—the bond not being extorted *colore officii*, but voluntarily executed upon the delivery of property—was valid as a common law obligation. In the case before us, the defendant in execution had submitted to, and admitted a levy—the plaintiff's testator, voluntarily, as we must infer, entered into this obligation as his surety, that the property levied on should be forthcoming at a particular time and place, and we can come to no other conclusion than that he is bound by his contract—and under the influence of Mead v. Figh, 4 Ala. R. 279, he is estopped from denying, either that a levy was made

or that his principal had no property in the cotton. [Caw-thorne v. McCraw, 9 Ala. Rep. 519.

5. It is supposed however, there is a variance between the obligation and the legal proceedings, which is incapable of aid from parol proof, and which prevents it from having any effect. The supposed variance is the omission of the names of some of the defendants, in the recital of the execution, and the omission to conform the terms named in the condition with it. Although these were sufficient to destroy the effect of the bond, as a strict compliance with the statute, they do not render it invalid. It is a strained and forced conclusion, to say, that because the execution issued against Lunsford, it will be concluded that it issued against him alone. This might be correct as a *prima facie* intendment, but certainly is open to explanation. If we look to the contract evidenced by the bond, it will be seen the description of the execution is no part of it. The levy, and the re-delivery of the cotton to the debtor, is the consideration, or inducement, for him and his sureties to undertake it shall be forthcoming at a particular time and place. The sum due on the execution is of no sort of importance, except for the purpose of ascertaining the damage which may flow from a breach of the condition. It would be a monstrous absurdity, that engagements of the most solemn nature might be avoided, because of the misrecital of the facts, or circumstances, which induced them. It is a general proposition, that meets us every where, that the consideration, even when set out in a deed, may be explained by parol evidence. [Cowen & Hill's Notes, 1441.] Nor are decisions lacking on the precise point we are now considering. In Hewlett v. Chamberlayne, 1 Wash. 367, the forthcoming bond omitted entirely to set out the amount of the execution, yet the court held this to be no objection in an action of debt, although a motion for a summary judgment had been refused, because of the non-conformity of the bond to the execution. In Stockton v. Turner, 7 J. J. M. 192, an injunction bond recited the judgment enjoined as for $280 50, when the true sum was $288 50, yet the court sustained the bond, on the ground of an *estoppel.* It is said the recital of a particular fact in the condition of the bond, will estop the *obligor* from denying it. [Willes, 9.]

On the other hand, when the recitals do not constitute a part of the contract, it is said by Chief Justice Kent, to be a settled rule, that even a mistake in the recital of a bond, does not vitiate it, for it is no essential part of the bond. [Talmadge v. Richmond, 9 John. 85; See also, St John v. Dagges, Hob. 130; Coke Litt. 352, b; Weissinger v. Crook, 7 Ala. Rep. 710.] In accordance with these principles, a bail bond was held to be good, although the christian names of both the plaintiffs were misstated in the bond. [Colburn v. Downs, 10 Mass. 21, and a bastardy bond was sustained when the condition was to answer a complaint made in 1816, instead of 1833, when it was really made. [18 Pick. 257.]

The authorities we have quoted, would amply justify the rejection of any description of parties, sums, &c. in the recitals of the bond, which were not in accordance with the fact, but in the present case, no repugnancy is made to appear. We are not informed the sums stated in the condition is not the true aggregate of the judgment, damages, and costs, and we have already remarked, that because an execution is recited as having issued against Lunsford, it is not conclusive that it issued against him alone. The case of Coleman v. Crumpler, 2 Dev. 508, which is supposed by the counsel for the plaintiff to contain a principle which should govern this, is by no means analagous. There the contract was, to perform and abide by such final decree as might be rendered in a suit wherein John Crumpler and Mary *Crumpler* are defendants. On a replication to the plea of conditions performed, the plaintiff averred that a suit was pending in which John Crumpler and Mary *Coleman* were defendants, and that the defendants had not paid the decree rendered in that suit. On the issue it was shown that the bond was given in this suit, with the mistake in the name, but the court held parol evidence insufficient to warrant a recovery. Without stopping to consider whether this decision is in harmony with others which we have already quoted, it is sufficient to remark, that the contract made by the obligors, was with reference to a particular suit, and it might well be a matter of doubt, if another suit could be intended without the reformation of the contract by a court of equity, but in the present case the contract is with reference to the delivery of cotton, and the pend-

ing suit is no further of importance than to ascertain the contract had reference to it, as by that, the damages arising from the non-delivery are to be ascertained. In this aspect there seems to us no reason whatever why parol evidence should not be admitted to show the bond was taken with reference to the execution in the sheriff's hands.

On the whole, after giving this case the fullest consideration we are satisfied there is no error.

Judgment affirmed.