# SIMMONS *vs.* WILLIAMS.

[BILL IN EQUITY TO ENJOIN JUDGMENT AT LAW ON GROUND OF EQUITABLE SET-OFF.]

1. *When distinct cross demands may be set off in equity.*—The mere existence of mutual and independent demands does not authorize the interposition of equity to set them off against each other ; but, to warrant the interference of equity, there must be circumstances from which it can be inferred that one debt was contracted on the faith of the other, or that there was an agreement between the parties that the one should be discounted from the other, or there must be some other intervening equity which renders the interposition of that court necessary for the protection of the demand sought to be set off.

2. *Demand due to administrator cannot be set off in equity against his individual debt.*— An administrator *de bonis non* having recovered a decree, on final settlement, against the administrator in chief, the money was collected under execution against the surety on the latter's official bond ; and the decree having been afterwards reversed on error, the surety sued at law to recover the money : *Held,* that the defendant could not enjoin the judgment at law, by alleging that he had paid over the money to the distributees of the estate, some of whom were insolvent and non-resident ; that he had subsequently recovered another decree against the principal administrator, on which execution had been issued and returned 'no property'; and that the surety had been indemnified by his principal.

3. *General prayer authorizes what relief.*—Under the prayer for general relief, when the bill is not filed in a double aspect, no relief can be granted which is inconsistent with that specifically prayed for.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by the appellant, James L. Simmons, against Thomas R. Williams and William C. Price, and alleged these facts : That, in 1840, said Price, as sheriff of Benton county, was duly appointed administrator, with the will annexed, of William Burns, deceased, and as such received a large amount of property belonging to his estate ; that on 14th January, 1842, on the application of the distributees of the estate, said Price was removed from said administration, and complainant was duly appointed administrator *de bonis non* of said estate ; that said Price was afterwards cited by complainant, to appear before the Orphans' Court of said county and settle his administration on said estate, and on

17th January, 1845, a final decree was rendered against him by said court, in favor of complainant as his successor, for $1,982 69; that an execution was duly issued on this decree, on the 22d February, 1845, and was duly returned "no property found"; that executions were then duly issued on said decree against said Price and the sureties on his official bond, who were said Thomas R. Williams and one Isaac Haynes; that under these executions, the amount of said decree, with interest, amounting to $2,054 11, was made from a sale of property belonging to said Williams, and this sum was received by complainant, as administrator of said estate; that in February, 1847, complainant filed his accounts and vouchers for a final settlement of his administration on said estate, and on the 5th April, 1847, a final settlement thereof was made with said court; that pursuant to this decree, complainant paid over to the several distributees of said estate, some of whom were insolvent, and others non-residents, their respective distributive shares of said estate as ascertained by said decree.

The bill further alleges, that in November, 1847, without any notice thereof having been given to complainant previous to his said settlement, said Williams sued out a writ of error on the decree which complainant had obtained against said Price, and took said cause to the Supreme Court, where, on the 11th February, 1848, said decree was reversed, and the cause remanded for further proceedings; that on the 28th March, 1848, said Williams instituted suit against complainant for the recovery of the money which had been collected under execution against him as aforesaid, and on the 25th April, 1853, succeeded in obtaining a judgment against him for the sum of $3,554 97, besides costs of suit; that on the 22d August, 1850, complainant commenced proceedings anew in said Orphans' Court, against said Price, to compel a final settlement of his administration on said estate, and on the second Monday in November, 1850, obtained another decree against him, as administrator of said Burns, for $1,982 69; that an execution was duly issued on this decree, on 16th March, 1851, and was duly returned "no property found." The bill alleges, also, that on the trial of said action at law, brought by Williams as aforesaid, complainant endeavored to make available as a defence the liability of said Williams to

him, but the court decided that it was not a good defence at law ; that said Williams was indemnified by Price, either in whole or in part, as his surety ; that Price is, and has been for several years, utterly insolvent ; and that Haynes, the other surety on his official bond, is dead, and his estate insolvent.

The prayer of the bill is for an injunction of the judgment at law, and for general relief.

The chancellor dismissed the bill for want of equity, and his decree is now assigned for error.

WHITE & PARSONS, for the appellant :

The general proposition is not denied, that the rule in regard to set-off is the same in equity as at law, unless there be some peculiar circumstance, or natural equity, growing out of the condition of the parties or their mutual transactions, which would require the interposition of a court of equity, and which a court of law could not regard ; also, that equity, following the law, will not allow a set-off of a joint against a separate debt, or of debts accruing in different rights.—Story's Equity, §§ 1434, 1437; Cave v. Webb, 22 Ala. 583; 8 *ib.* 206. But special circumstances may occur, creating an equity which will justify such an interposition; and the facts shown in this record present a strong case for its interference.

The bill alleges, in the first place, that the complainant has paid over the money to the several distributees of the estate, some of whom are insolvent, and some non-residents ; and if the money is now recovered from him, he is remitted to his action against insolvent persons. This presents the very state of facts, upon which, when this case was last here from the court of law, this court declined to express an opinion, but left an open question.—22 Ala. 432.

Again ; the reversal of the decree under which the money was collected, restored the parties to the same condition in which they were before its rendition.—18 Ala. 407. When the appellant again collects the money from Williams, the distributees will have the right to call him to another final settlement and distribution ; and having collected the money as administrator, he will be estopped from denying that he received it in that character. When he sets up the former

distribution, he will be met by the argument, that the reversed decree is mere waste paper, and that there is nothing to protect them against liability to him for the money paid under it. Equity, it is said, delights to prevent a multiplicity of suits, and frequently entertains bills for and against parties, between whom there exists no connection whatever except a community of interest.—2 Ala. 609.

Is there not something like *natural equity* in this peculiar condition of things, which appeals strongly to the powers of a court of equity ?   "Natural equity says, that cross demands should compensate each other, by deducting the less sum from the greater, and that the difference only is justly due; and if there is a connection between the demands, equity acts upon it, and allows a set-off under peculiar circumstances."—Story's Equity, § 1434.   In this case, there is a clear and well-ascertained connection, for the two demands spring out of the same estate; and there is certainly no equity in allowing the collection of funds from Simmons, which the court would, the next minute, order to be refunded to him by the party collecting them.—Nelson v. Dunn, 15 Ala. 516; Leeds v. Marine Insurance Co., 6 Wheat. 565.

The fact that Simmons has paid off the distributees, clearly shows his right to retain this money, *ex æquo et bono.*—Dupuy v. Roebuck, 7 Ala. 486; Duncan v. Ware, 5 Stew. & P. 119; Meredith v. Richardson, 10 Ala. 828; 1 Har. & John. 408.

The allegation that Williams has been indemnified, either wholly or partially, by his principal, who is insolvent, is another strong ground for the interposition of equity; for it is well settled, in such case, that the creditor may come into equity, to subject the property to the payment of his demand. If the creditor may go into equity to reach the specific property, why may he not invoke its aid to show that the surety ought not to recover this money, because his principal has placed funds in his hands to pay this debt?

JOHN T. MORGAN, *contra,* contended, among other things, that if Williams was in any way liable to Simmons, the debt was not such an one as would form the subject-matter of a set-off in equity, because,—

1. The demand is a purely legal demand, and would intro-

duce into a court of equity the subject-matter of a suit at law; and the defences of *non est factum*, release, &c., would come up.

2. There is no mutuality between the debts ; the debt to Williams being due from Simmons personally, while that owing to Simmons (if any at all) is due him as administrator of Burns.—Murray v. Toland, 3 Johns. Ch. 569 ; Dale v. Cook, 4 *ib.* 11; Gayle v. Luttrell, 1 Y. & Jerv. 180 ; Lamme v. Saunders, 1 Mon. 267.

3. If the demands were mutual, there would still be no equity in favor of Simmons as against Williams, and therefore no cause for a resort to chancery.—Cave v. Webb, 22 Ala. 583; Wathen's Executor v. Chamberlain, 8 Dana, 164; Stewart & Co. v. Chamberlain, 6 *ib.* 32.

GOLDTHWAITE, J.—At the common law, where there were mutual and disconnected demands, there could be no set-off, but each party was compelled to sue ; and equity, in such cases, followed the law, unless there was a natural equity which would authorize the interposition of that court.— Story's Eq., §§ 1433, 1434. The "natural equity", which would justify the interference of a court of chancery, was held to exist in cases of mutual credits—that is, where the one debt was contracted on the credit of the other, (Story's Eq., § 1435) ; or where some other circumstance, such as insolvency, intervened, which might result in the loss of the debt unless it was discounted.—Tuscumbia Railroad Co. v. Rhodes, 8 Ala. 206.  But there is no case that we have found, which goes to the length of holding that the mere existence of mutual and independent debts would allow them to be set off in equity. If that was so, then, as was said by Lord Mansfield, in Green v. Farmer, 4 Burr. 2220, " They would stop the course of the law, in all cases where there was a mutual demand."

In the present case, there was no mutual credit; on the contrary, the demands are entirely distinct and independent of each other.  The one is founded on the bond executed by Williams as the surety of Price, and is due to Simmons in his representative character, as the administrator *de bonis non* of Burns ; and the other is an individual liability of Simmons, based upon the collection of money on a decree which was afterwards reversed.  It is true, that the decree on which the

money was collected, was rendered in favor of Simmons against Price, on the final settlement of his accounts as the former administrator of Burns; and the bill alleges that, subsequently to the payment of this money by Williams, and during the pendency of the suit to recover it back, another decree was rendered in favor of Simmons against Price; and that the liability of Williams for the payment of this decree was perfected by the issue of an execution, and return of no property, against his principal, Price. But, if it be conceded that these proceedings had the effect of rendering Williams liable on his bond for the amount of the last decree, we do not see that such liability would warrant the interference of equity. To do this, the demands must be connected in the way of mutual credits—there must be circumstances from which it can be inferred that the one debt was contracted on the credit of the other, or that there was an agreement between the parties that the one should be discounted from the other, (Jeffs v. Wood, 2 P. Wms. 128; Story's Eq., § 1435); or there must be some other intervening equity, which would render the interposition of that court necessary for the protection of the demand sought to be set off.—Tuscumbia Railroad Co. v. Rhodes, *supra*.

Roebuck v. Dupuy, 7 Ala. 484, simply asserts, that where one pays a judgment, for a debt which he actually owes at the time of payment, and which could be recovered in the action brought, it is, in effect, but the payment of the debt, and he could not recover it back if the judgment was reversed; but neither the principle of that case, nor that of Meredith v. Richardson, 10 Ala. 828, is applicable to the case at bar, for the reason that there was no debt or liability against Williams at the time he paid the money on the first decree, and the payment of it by him, could not, therefore, properly be referred to a future contingent demand. In other words, the mere fact that Williams afterwards became indebted to Simmons, did not authorize the latter to set off that debt in equity against a demand previously existing against him in favor of Williams.

In relation to the other grounds of equity, which have been noticed by the appellant, it is only necessary to observe, that if he has paid over the money which he wrongfully collected

out of Williams, to insolvent distributees, it can confer no rights as against the party from whom the amount was collected. He can reimburse himself out of the decree, on which he alleges Williams is responsible. That Williams has been indemnified by Price, does not affect the present suit, as its object, and the special relief prayed for, is to set off the claim of the appellant against the judgment Williams has recovered against him. The rule is, that under the prayer for general relief, when the bill is not filed in a double aspect, no relief can be granted, unless consistent with that specifically prayed for.—Thomason v. Smithson, 7 Port. 144; Pleasants v. Glasscock, 1 Sm..& M. Ch. 17; Story's Eq. Pl., § 42; Dan. Ch. Pr. 435. To claim the right of set-off against a surety, and to insist that he should give up his indemnity, are wholly inconsistent.

Decree affirmed; the appellant paying the costs of this court.

CHILTON, C. J., and RICE, J., having been of counsel in this case before their election to the bench, the cause was heard before GOLDTHWAITE, J., alone; and he being of opinion that there was no error in the record, no statutory court was summoned.