# Tate v. Evans.

*Bill in Equity to enjoin Mortgage Sale and to obtain the Benefit of a Set-off.*

1. *Equity, when will not intervene to set-off demands.*—The mere existence of mutual and independent demands does not authorize the interposition of equity, to set them off against each other. To warrant the interposition of a court of equity, there must be circumstances from which it can be inferred that one debt was contracted on the faith of the other, or that there was an agreement between the parties that one should be discounted for the other, or there must be some intervening equity, which renders the interposition of that court necessary for the protection of the demand sought to be set-off.

2. *Same.*—If a partner owing his copartners, gives his individual note and secures it by mortgage on his individual property, the transaction is thereby disconnected from the partnership accounts—if they ever had any connection—and the demand becomes purely a legal one; and the mere unfinished condition of the partnership business, and a balance in that account due from mortgagee to mortgagor, will not authorize a court of equity to interfere by setting off the note against the balance due, and restraining the foreclosure of the mortgage.

APPEAL from Chancery Court of Butler.

Heard before Hon. H. AUSTILL.

The case is sufficiently stated in the opinion.

HERBERT & BUELL, for appellants.

GAMBLE & BOLLING, contra.

STONE, J.—The bill in the present case avers that the complainant and defendant formed a partnership to carry on the mill business in the State of Florida; that such partnership was formed in 1871, and continued until 1874, when it was dissolved; and that at the dissolution, and at the time the bill was filed, Tate, the appellant, was indebted to Evans, the complainant below, in the sum of forty-five hundred dollars—on partnership account—a sum greater than that, the collection of which the present bill seeks to enjoin. The debt from Evans to Tate, the bill alleges, is a note of near twenty-nine hundred dollars, secured by mortgage on property, described as being in Butler county, Alabama; the mortgage containing a power of sale, and alleged to be past due. The bill alleges that Tate, the mortgagee, had advertised the mortgaged property for sale, the sale to be made at Greenville, Alabama—the place designated in the mortgage. The object of the bill is to enjoin the sale of the mortgaged

property, and to set-off against the debt thereby secured, the alleged balance due Evans in the partnership account in the mill business in Florida, stated above. There was a demurrer to the bill, for several reasons stated, and also a motion to dissolve the injunction, first, for want of equity in the bill— second, on the denials in the answer. The chancellor overruled the several objections to the bill, and retained the injunction.

In 2d Story Eq. Ju., § 1432, speaking of set-off, it is said, "Where the court [of Equity]·does not find a natural equity going beyond the statute (of set-off,) the construction is the same in equity as at law." The same author, in § 1436, says, "Courts of Equity, in virtue of their general jurisdiction, are accustomed to grant relief in all cases when, although the mutual debts are independent, yet there is a mutual credit between the parties, founded, at the time, upon the existence of some debts due by the crediting party to the other. By mutual credit, in the sense in which the terms are here used, we are to understand a knowledge on both sides of an existing debt due to one party, and a· credit by the other party, founded on, and trusting to such debt as a means of discharging it." It will be discovered that we have made a slight change of the author's language in the above extract.

The substance of the general principles laid down by this court, as governing in matters of equitable set-off, is well and clearly condensed in the following language, which we adopt.

"1. That although courts of equity at first assumed jurisdiction on the natural equity that one demand should compensate another, and that it was iniquitous to attempt at law to enforce more than the balance; yet now they only exercise it when a legal demand is interposed to an equitable suit. 2. When an equitable demand can not be enforced in a court at law, and the other party is suing therein. 3. When the demands are purely legal, and the party seeking the benefit of the set-off can show some equitable ground for being protected."—2 Brick. Dig. 433, § 174. "Insolvency is recognized as a distinct equitable ground entitling a party to relief, even in cases where both demands are purely legal."—Id. 434, § 175. See also *French v. Garner,* 7 Por. 549; *Donelson v. Posey,* 13 Ala. 752; *White v. Wiggins,* 32 Ala. 424; *Wray v. Furniss,* 27 Ala. 471.

The mere circumstance, however, of mutual and independent demands, does not authorize the interposition of equity to set them off against each other; but, to warrant the interference of equity there must be circumstances from which it can be inferred that one debt was contracted on the faith of the other, or that there was an agreement between the par-

(3)

[Tate v. Evans.]

ties that the one should be discounted from the other, or there must be some intervening equity which renders the interposition of that court necessary for the protection of the demand sought to be set-off.—*Simmons v. Williams*, 27 Ala. 507; *McKinley v. Winston*, 19 Ala. 301.

Testing the present bill by these well-defined principles, we think it fails to make a case for equitable set-off. There was no suit pending, which the bill sought to arrest. No averment that one debt was contracted on the faith of the other, and no averment of Tate's insolvency. Both complainant and defendant were residents of Florida; and the partnership, out of which the alleged indebtedness grew that is sought to be set-off, was formed and conducted in that State. Tate's claim on Evans, which was sought to be collected by a sale of the mortgaged property, was an Alabama transaction, secured by a mortgage on property in Alabama.

The only part of the present bill which tends in the remotest degree to charge any connection between the demands sought to be set-off, is the seventh section. Its language is, "That during the continuance of said copartnership, the said Walter Tate up to the 29th day of January, 1872, and before that time, advanced for orator on account of said copartnership the sum of two thousand eight hundred and eighty-two and 50-100 dollars, for which orator executed to him, the said Tate, his promissory note, bearing date the 29th day of January, 1872, and payable on the 29th day of July, 1872, and in order to secure the payment of said note on the said 29th day of July, 1872, orator made and executed his mortgage to the said Walter Tate, conveying to him, the said Walter Tate, the mill then owned by orator on the Mobile and Montgomery Railroad, in Butler county, Alabama," &c. *On account of said copartnership* are the only words which can be supposed to connect the two claims together in any way. The allegations of a bill must be taken most strongly against the pleader.—*Lockhard v. Lockhard*, 16 Ala. 423; *Stubbs v. Leavitt*, 30 Ala. 352. This averment falls very far short of showing that either debt was contracted on the faith of the other. On the contrary, the bill shows that Tate did not trust to the products of the partnership for his reimbursement. He took the individual note of his partner, payable to himself, with a mortgage for its security, on individual property of Evans. This disconnects the transaction from the partnership accounts, if they ever had any connection, and makes the demand a purely legal one. We rather infer, from the averments of the bill, that Tate's claim on Evans was for a loan of money, that Evans might, therewith, contribute his share of the capital with which to erect the mill. Such transaction does not, *per se*, enter into the part-

nership accounts.—Story on Partnership, § 219 and notes; Collyer on Part. §§ 269, 271, 272. The case of *McKinley v. Winston, supra,* is not distinguishable from this, and relief was denied in that case.

The bill contains no equity, and the injunction should have been dissolved. The decree of the chancellor is reversed, and a decree here rendered dissolving the injunction.

Let the cause be remanded for further proceedings, to be had in accordance with the principles declared above.