### J. C. DENSON ET AL. v. W. H. HORN.

#### (No. 3110.)

APPEAL from Gonzales County. Opinion by DAVIDSON, J.

HARWOOD & HARWOOD, counsel for appellants.

No counsel appeared for appellee.

§ 226. *Claim bond; venue of suit on; when statute of limitations begins to run against action on.* Appellee, as constable of precinct No. 3 of Gonzales county, levied a writ of execution in favor of W. J. Williamson, and against one St. Claire, upon sixteen head of cattle run-

ning in Gonzales county. Said writ was issued from a justice's court in Fayette county. Appellant Denson presented claimant's oath and bond to appellee, which were duly accepted by him as constable aforesaid, and filed with the justice of the peace of said precinct 3, in Gonzales, as required by the provisions of article 4829 of the Revised Statutes. Trial of the right of property for said sixteen head of cattle was had in said justice court, and from the judgment in said court appeal was prosecuted to the county court of Gonzales county. In that court the oath and bond were quashed on motion of plaintiff, and judgment was thereupon entered in favor of the plaintiff, and against the appellants in this case. Upon appeal to this court, that judgment was reversed, and ordered dismissed, and, in obedience to the mandate of this court, said cause was finally dismissed from the docket of the county court of said Gonzales county on the 6th day of June, 1889. On the 20th day of January, 1890, W. J. Williamson brought his suit against the constable, appellee in this case, for the value of the sixteen head of cattle levied upon by him, and turned over to appellant Denson, under the said insufficient affidavit and claim bond, their value being alleged at $150, the amount fixed by the appellee at the time of taking said bond. On the same day appellee asked that appellants be made parties, and for a judgment over against them in his favor, in case the plaintiff, Williamson, should recover judgment against him. This was granted, and they were duly cited, and in due order of pleading filed their plea of privilege of residence in Fayette county, as well as their plea of limitation of two years.

We do not think either plea well taken. The bond was returnable to the justice's court of precinct No. 3 of Gonzales county, and by its terms, and under the law, appellants were obligated to perform their contract at that court. [R. S., art. 4829; Zurcher v. Krohne, 63 Tex. 118.] No action could have been maintained on this bond until

after the dismissal of the suit from the county court of Gonzales county in June, 1889. Suit was instituted against appellee in January, 1890, and the same day citation was requested against the appellants, making them parties also, and they were accordingly made parties. Limitation did not run in favor of appellant until the dismissal of the suit in June, 1889. [Zurcher v. Krohne, 63 Tex. 118.] This suit was treated by the parties to it as a suit upon the bond, in so far as the parties to this appeal are concerned. If appellee had the right to sue appellants, or to ask judgment over against them, in this suit, then the obligation was in writing, and the statute of two years' limitation did not apply. In no event was the two-years statute of limitation applicable, because the cause of action did not arise so as to bring it within the purview and operation of that statute.

§ 227. *Claim bond; insufficient as a statutory, good as a common-law bond, when; right of officer levying execution to sue on; when sued by plaintiff in execution, officer may make the principal and sureties in bond parties, etc.* Appellants' main contention is that they are not bound and cannot be held liable to appellee as a constable on the bond executed by them as a claim bond. This contention is based upon the proposition that it is a statutory bond, and made for the benefit of the plaintiff in the execution, and cannot inure to the benefit of the officer taking it. Having been quashed as a statutory claim bond, the contention is that its functions were at an end,—at least, if good as a bond at all, it would only be so as a common-law bond, and would inure only to the plaintiff's benefit. It would be good as a common-law bond. [Whitsett v. Womack, 8 Ala. 466; Meredith v. Richardson, 10 Ala. 828; Palmer v. Vance, 13 Cal. 553.] "In those states in which the delivery bond, when forfeited, has the force and effect of a judgment, it is nevertheless true that such additional force given by statute is no ademption of the common-law remedy of the

party by action on the bond." [Murfree, Sher., § 650.] Under this view of the law, we think it clear that the plaintiff in the execution, and to whom the bond was made payable, would be authorized to bring suit on said bond for the value of the cattle. If this be correct, then the appellee would have been subrogated to plaintiff's rights by implied transfer of the debt to the said appellee. The delivery is not authorized for the convenience and benefit of the officer, but for the security of the plaintiff, and it inures in law accordingly. If a suit be brought upon the bond at all, the officer's name is used for the benefit of the creditor. A suit, therefore, cannot be successfully brought by an officer on a forfeited delivery bond, unless he can show that he has been held officially liable for the judgment, and paid it. [Id., § 651.] "A delivery or forthcoming bond is forfeited if all the property is not delivered at the time and place stipulated. If the failure is the result of accident or misfortune, unmixed with neglect, it does not operate a breach of condition." [Id., § 654.] The breach of the bond cannot be avoided without returning all of the property as stipulated, or by paying off and discharging the debt." "If the claim in the right of property proceedings was not sustained, no matter for what reason, the bondsmen of the claimant were bound to return the property or its value in ten days." [Garrity v. Thompson, 67 Tex. 1; Wallace v. Terry, 15 S. W. Rep. 35, 36.] The bond in this case, having been quashed as a claimant's bond, did not release the obligors from their obligation, and they were bound to return the property. The bond became forfeited, and suit could be instituted thereon by the plaintiff, or by the officer for the benefit of the plaintiff. But the plaintiff did not sue upon the bond. He brought his suit against the officer, and thought to hold him responsible for his official negligence. This he had a legal right to do. At least it was done, and all parties have acquiesced in this phase of the proceedings

in the trial court. Out of the fact that the officer is forced to and does pay the debt grows his right to maintain his action against the obligors in the bond. [Murfree, Sher., § 651; Walker v. Howell, 1 Cold. 238; Smith v. Alexander, 4 Sneed, 482; Lintz v. Thompson, 1 Head, 457; Moore v. Bettis, 11 Humph. 68.] Speaking of the attitude of the officer to such bonds, the supreme court of Tennessee say: "If the officer, as such, had been liable for the judgment, and had actually satisfied it, it may be that, upon an implied transfer of the judgment to him by operation of law, he might have resorted to an action on the bond." [Walker v. Howell, 1 Cold. 238–240.] Again, it is said, in citing Smith v. Alexander, 4 Sneed, 482, that "the latter case recognized the doctrine that, if a collecting officer or agent, on the ground of official negligence, has been subjected by judgment of law to pay the amount of the debt as to the creditor, the legal effect is that, by an implied transfer or assignment, the debt passes to the officer or agent, who may enforce it against the original debtor. But it must be observed that to produce this result two things are indispensably necessary: *First,* that the liability of the officer in default shall have been fixed by the judgment of a tribunal of competent jurisdiction; and, *secondly,* that such judgment shall have been satisfied. It is by force of these two concurring facts that the implied transfer of the debt is effected." [1 Head, 458–460.]

It results from these two propositions that appellee must have his liability fixed by a judgment of a competent court, and that he shall have paid that judgment, before he can demand of appellant the payment of the sum stipulated in the bond. It is not to be understood from this that he is not entitled to have the said obligors made parties to the suit between himself and the plaintiff in the execution. This can be done, so that in one suit the rights of the parties can be adjudicated, and thus avoid a multiplicity of suits. While this may be done

so that, in case a judgment is rendered against him, he may have judgment over against the obligors in the bond, yet he cannot force the payment of that judgment until he has paid the debt of plaintiff.   The law only intends that he can demand of the said obligors the payment of the debt after he has paid off the debt made due by the judgment against himself to the plaintiff in the execution.   Should he never pay said debt or judgment he would not be authorized to demand payment of the obligors.   The judgment fixes the *status* of the parties and adjudicates their rights in the suit.  . When the officer pays the debt he is then, under the judgment, entitled to his execution, and not before, for whatever amount he may, by virtue of the judgment against him, be compelled to pay, to the amount of the bond.   This is in harmony with our laws and practice.   It is the policy of our laws to avoid multiplicity of suits, and it is never intended that two suits shall be brought when the rights of parties can be as easily and as readily adjudicated in one suit.   It was not necessary in this case for appellee to wait till judgment was obtained against him, and he had paid it off, before he was entitled to sue appellants.   He had his option of so doing, or of making them parties to this proceeding, and adjudicate all the matters in one suit, and our laws favor the policy and practice adopted by the appellee in the suit below.   He could not, however, obtain a judgment against the appellants until the judgment was rendered against himself, nor could he demand payment of his judgment against the appellants until he had satisfied the judgment against himself in favor of the plaintiff in the execution. When he was sued he was entitled to have appellants made parties, and to a judgment against them for any amount that he was forced to pay, to the full value of the cattle as fixed by the bond, if he was forced to pay that amount.   Williamson obtained judgment against the appellee for $150, and for the same amount appellee

recovered judgment against the appellants. This he was entitled to, and the judgment is correct, and, whenever appellee pays off and discharges Williamson's debt, he will be entitled to his execution against appellants on his judgment against them. The appellee will not be entitled to his costs until he has paid off Williamson's debt. We have discovered no error requiring a reversal of the judgment in this case, and it is therefore

March 14, 1891.                                         Affirmed.