**Robert I. INGALLS, Jr., and Mrs. Jane S. Ingalls, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 66–289.**

United States District Court
N. D. Alabama, S. D.
May 16, 1967.

Frank Bainbridge, Walter L. Mims, Birmingham, Ala., for plaintiffs.

Macon L. Weaver, U. S. Atty., Northern District of Ala., Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ALLGOOD, District Judge.

### I

### STATEMENT OF THE CASE

This is a suit for the refund of income tax paid by the Plaintiffs for the year 1961. Their return was timely filed and the tax shown to be due thereon was paid. Upon examination of the return a deficiency in income tax in the amount of $150,784.74 was assessed and paid together with interest thereon in the amount of $30,174.61. Plaintiffs filed a timely claim for refund for tax and interest in the amount of $180,959.35. The claim was disallowed and Plaintiffs filed this suit for refund of the amount paid within the time allowed by law. The case was heard by the court without a jury and was submitted upon oral testimony and documentary evidence. Counsel for the parties filed excellent briefs.

### II

### THE FACTS

The court finds the facts to be as follows:

Plaintiff, Robert I. Ingalls, Jr., (hereinafter referred to as Ingalls) entered into a written contract of employment with Ingalls Iron Works Company, Inc. (hereinafter referred to as the Company) on the 19th day of March, 1959, the terms of which were that the Company agreed to pay him $100,000.00 per year for a term of fifteen years to serve as its general manager during that period. This contract was approved and ratified by the Company's directors. Such a contract had precedent in that a similar contract had been entered into by the Company and Robert I. Ingalls, Sr. prior to his death and during the time that he served as general manager and president of the Company.

The stock of the Company was owned by Plaintiff, his mother and two banks as Trustees for Plaintiff's two daughters. For more than ten years prior to January 30, 1961, the Ingalls family had been engaged in bitter and prolonged legal warfare over the control of Ingalls Iron Works Company and its subsidiaries. The undisputed testimony was that the thrust of the litigation was by the members of Plaintiff's family (and/or their Trustees) to force his removal as officer, director, employee and trustee, and to also force him to dispose of his stock in the Company. Negotiations were continuous and bitter in and out of the courts by teams of lawyers representing all parties. It is evident from the undisputed testimony that the success or failure of the Company was at stake.

As of January 30, 1961, Plaintiff was indebted to the Company in the amount of $228,360.00 which indebtedness was

evidenced by Plaintiff's promissory note dated September 24, 1958, in the original amount of $258,654.00. This indebtedness was not due on January 30, 1961. The indebtedness was secured by substantial collateral and bore interest at 2% per annum. The evidence is undisputed that this indebtedness had existed for a long period of time prior to the date of the note. Payments had been made from time to time, interest had been paid, new notes had been executed to renew old notes. The indebtedness was bona fide between Plaintiff and his Company and was in negotiable form. The evidence is clear that during the negotiations which resulted in the purchase by the Company of Plaintiff's employment contract and the renewal of his note to the Company, that Plaintiff admitted his indebtedness to the Company in the face amount of the note and that the Company (or the attorneys representing the other stockholders of the Company) contended that his indebtedness was in excess of the face amount of his note. The evidence is also undisputed that the amount of this indebtedness and the termination of Plaintiff's employment were, in the words of the witness Murray, "a small part of a large package * * *. The large package could not be settled unless all of the pieces were settled and this was a small but critical issue that had to be determined."

On January 30, 1961, the legal battles which have often been referred to by this Court and other Courts as "The Ingalls Litigation" came to an end by an "overall settlement" negotiated over a period of a year or more. The results, insofar as this case is concerned, can be stated fairly briefly. *First,* Ingalls entered into a written contract with the Company whereby the "Company agrees and does purchase from Ingalls, and Ingalls agrees to and does sell to the Company, said contract" (the employment contract dated 19th March, 1959) * * * "and all of Ingalls' rights, interest in and title thereto, to the end that said contract is forthwith terminated and extinguished." The purchase price was $228,360.00 plus interest at 2% after maturity, payable in ten equal annual installments of $22,836.-00 each, the first installment being due and payable on February 1, 1962, and a like installment on the same date each year thereafter until paid in full. *Second,* Ingalls executed a new renewal note to the Company dated January 30, 1961, in the amount of $228,360.00 payable in ten equal annual installments of $22,836.-00 each, the first installment due February 1, 1962. The written agreement between the parties provided, "that so long as any part of said indebtedness or any interest thereon remains unpaid the Company may make the payments herein agreed to be paid by him by currently crediting said indebtedness with such payments as they accrue." *Third,* Ingalls sold all of his stock in the Company to one Hulsey for $3,750,000.00 and thereupon Ingalls resigned as an officer, director, employee and trustee. *Fourth,* "The Ingalls Litigation" (pending and threatened in the future) was finally ended.

On February 1, 1962, and each year thereafter, Plaintiff received from the Company its check in payment of its installment payment on the employment contract. Receipt of such payment was shown each year on Plaintiff's income tax return for the year of receipt and tax was paid thereon. Also, on February 1, 1962, and each year thereafter Plaintiff issued his check to the Company in payment of his installment note and due credit therefor was entered on the note.

Upon examination of Plaintiff's return the Commissioner determined that cancellation of Plaintiff's indebtedness due the Company in return for cancellation of the employment contract resulted in income to Plaintiff of $228,360.00 as of January 30, 1961. Counsel for the Commissioner argues in his brief that "there were no business reasons for the Company to have the transaction cast in terms insisted upon by the taxpayer. The terms ultimately agreed to were for the benefit of the taxpayer to further his attempt to frustrate the taxability in one year of the entire indebtedness cancelled."

## III

## THE ISSUE

There is only one issue to be determined. Did the purchase by Ingalls Iron Works Company of the employment contract between it and Plaintiff, Robert I. Ingalls, Jr., result in income to Plaintiff in the amount of $228,360.00 in the year 1961 by reason of Ingalls' indebtedness to the Company in the same amount?

## IV

## OPINION

■ This Court, based upon the documentary evidence submitted and the oral evidence presented by the witnesses is unable to agree with the Commissioner's determination or the argument presented by his counsel. We find as a fact that there was no cancellation of Plaintiff's indebtedness to the Company. His note was renewed on January 30, 1961, by the execution of a new note for the same amount as the old note with different due dates, and the unpaid portion thereof is still outstanding today. The amount of the note was not changed. There was ample business purpose, insofar as the Company was concerned, to agree to the renewal and the new due dates.

From the undisputed testimony it is evident that the stockholders who were opposing Plaintiff were convinced that the removal of Plaintiff was essential to the Company's existence. It would be difficult for this Court to conceive of a more pressing business purpose. By purchasing Plaintiff's employment contract on his terms and renewing his note, the Company was most certainly serving its best business purpose.

■ Neither party to the negotiations was in a position to dictate all of the terms of the employment contract purchase. The fact that the Plaintiff may have had a personal tax benefit in mind when he insisted on a ten-year payment does not recast the transaction so long as all of the obligations to be fulfilled were contracted for before a right to receive the consideration was definitely fixed and determined. The U. S. District Court for the Eastern District of Arkansas in the case of Oliver v. United States, 193 F.Supp. 930 said:

"* * * it must be recognized that a taxpayer has a perfect legal right to stipulate that he is not to be paid until some subsequent year, or that the payments are to be spread out over a number of years. Where such a stipulation is entered into between buyer and seller prior to the time when the seller has acquired an absolute and unconditional right to receive payment, and where the stipulation amounts to a binding contract between the parties so that the buyer has a legal right to refuse payment except in accordance with the terms of the agreement, then the doctrine of constructive receipt does not apply, and the taxpayer is not required to report the income, until the same actually is received by him."

■ The Fifth Circuit Court of Appeals in Williams v. United States, 219 F.2d 523 said:

We * * * have often declared, as other courts have, that the taxpayers may conduct their businesses so as to minimize their taxes, provided only that the arrangements are real, not sham arrangements, and are legally effective to accomplish the desired results and that, in determining whether the means used are, or are not, effective, the fact that a tax reduction is a moving cause in the choice is not a material factor.

■ The Supreme Court has recognized in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, that:

"The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."

■ Defendant's argument that Plaintiff's insistence that he be paid on the installment basis for his employment contract and, therefore, cannot recover is not sound under the facts and controlling rules and decisions.

On January 30, 1961, the date of the over-all settlement, there was no sum past due or due Ingalls by the Company under the employment contract. At that time Ingalls had the absolute right to refuse prepayment of all or any of the semi-monthly installments falling due under the employment contract during the next 12 years. Ingalls had the absolute right to insist upon the semi-monthly payments being made during this 12-year period in accordance with the clear terms of the employment contract. And the Company had no right to force Ingalls to accept any payments before the same became due under the terms of the employment contract.

What is material is whether or not the creation of the indebtedness of the Company to the Plaintiff by the terms of the employment contract purchase agreement automatically and without the consent, intention or agreement of the parties cancelled Plaintiff's debt to the Company. If it did, the Defendant would be entitled to prevail. We find no evidence that the parties to the agreement intended or agreed such to be the case. On the contrary, all of the evidence is that the parties did not so intend. Any cancellation, therefore, would have had to have been by operation of law. Even if we could read into this transaction an agreement to cancel the two debts as and when each installment came due, there would be no taxable income accruing to Plaintiff in 1961 because the Courts have consistently held that an agreement to cancel a debt in the future does not create taxable income at the time the agreement is made. Walker v. Commissioner of Internal Revenue, 88 F.2d 170 (CCA 5th, 1937) cert. denied, 302 U.S. 692, 58 S.Ct. 11, 82 L.Ed. 535.

Defendant argues that the mutual indebtedness of the parties, being in like amounts and having the same due dates effects a setoff. A review of the Alabama decisions refutes this contention. Simmons v. Williams, 27 Ala. 507; Tate v. Evans, 54 Ala. 16; McDade v. Mead, 18 Ala. 214; Dudley v. Whatley, 30 Ala.App. 579, 10 So.2d 43; Slaughter v. Martin, 9 Ala.App. 285, 63 So. 689; George v. Cahawba and M. R. Co., 8 Ala. 234. This Court recognizes that it is not necessarily bound by the Alabama decisions, but it is comforting to note that the Fifth Circuit has followed this Alabama law in income tax cases. In the case of Bailey v. Commissioner of Internal Revenue, 103 F.2d 448, that Court said that:

"Mutual debts do not per se extinguish each other."

In the same opinion, the Court commented and held that:

"A payment does not occur unless 'the money passes from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose.'"

At any time subsequent to January 30, 1961, Plaintiff could have discounted or otherwise negotiated the agreement of purchase of his contract. He also could have prepaid his note to the Company and retained and enforced his right to be paid according to the terms of the contract purchase. By the same reasoning, the Company could have negotiated Plaintiff's note to an innocent purchaser for value at any time that it was not in default. When such is the case, there has been no cancellation of the indebtedness. Without cancellation of the indebtedness in 1961 there can be no omitted income from this source.

Furthermore, other principals of law applicable to the case at bar are also conclusive on the right of Plaintiffs to recover: (1) The compromise and settlement of claims in dispute does not give rise to taxable income. Mertens Law of Fed.Income Taxation, Vol. 2, § 11.19 p. 71. (2) There is no income unless and until there has been a release of liability. Mertens Law of Fed. Income Taxation, Vol. 2, § 11.19 p. 71. (3) When a taxpayer is not enriched taxable income does not result. Mertens Law of Fed.Income Taxation Vol. 2, § 11.19. (4) An agreement to cancel a

debt in the future is not income until the debt is actually cancelled. Mertens Law of Fed.Income Taxation, Vol. 2, § 11.19, Footnote 15.

This Court is clearly of the opinion that the Plaintiffs did not in fact or constructively receive additional taxable income in 1961 as claimed by the Defendant and that the issue presented should be decided in favor of the Plaintiffs.