## M. I. Goodman v. J. I. Kopperl et al.

1. ADMINISTRATION OF ESTATES—*Province of Courts of Chancery.*— The jurisdiction of a court of chancery over estates of deceased persons has not been taken away by our statute concerning the administration of estates, and equity retains a general jurisdiction over the settlement of estates, concurrent with, but paramount to, that possessed by the probate courts, yet, primarily, the administration of estates of deceased persons is committed to the Probate Court, and a court of chancery can not and will not take jurisdiction save in very extraordinary and unusual cases, where the remedy afforded by the statute is inadequate.

2. ADMINISTRATION OF ESTATES—*Jurisdiction of Courts of Chancery Over Claims.*—A court of equity will not ordinarily assume jurisdiction of a claim against an estate until the claimant shall have had his claim allowed by the County Court, and then if any reason that may be deemed sufficient, can be assigned why that court can not afford the requisite relief, equity will assist him, but not otherwise.

**Bill,** to settle an estate. Error to the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 30, 1896.

### STATEMENT OF THE CASE.

This is a writ of error to reverse a final order dismissing complainant's bill, as amended, for want of equity, and vacating the order appointing William C. Malley receiver of all the property, assets and effects of Alexander Kopperl, deceased.

Goodman v. Kopperl.

The record in this case discloses that on May 4, 1896, M. I. Goodman, plaintiff in error, filed a bill in equity in the Superior Court of Cook County, on behalf of himself and all other creditors of Alexander Kopperl, alleging, in substance, the following :

That prior to February 11, 1896, Alexander Kopperl kept a small savings bank at No. 571 South Canal street, in Chicago, Illinois; that upon said February 11th, for some time prior thereto, and at the date of the filing of said bill of complaint, said Alexander Kopperl was indebted to complainant in the sum of six hundred dollars for moneys theretofore deposited in the bank of said Kopperl by said complainant, and that said indebtedness now remains wholly unpaid; that on February 11, 1896, said Kopperl, being then seventy years old, left the city of Chicago, and being in a demented condition, ended his life by committing suicide. That on said last afore-mentioned date, said Kopperl owed the depositors and creditors of his said bank, to wit, the sum of forty thousand dollars, and had assets with which to pay his said creditors, the sum of, to wit, five thousand dollars, and that upon said last mentioned date, and continuously since, said Kopperl has been wholly insolvent, unable to meet his debts, or to pay any of his obligations.

The bill further alleges that said Alexander Kopperl's bank has approximately some 200 depositors, who are creditors in amounts varying from ten dollars to three thousand dollars. That by reason of the insolvency of said bank, said creditors, who are poor people, are in the most straightened circumstances and have no resources whatsoever. That after the disappearance of said Kopperl on February 11th, said Kopperl's bank still continued to do business up to February 14, 1896, under the management and control of Amalia Kopperl, wife of said Alexander Kopperl, but that upon said February 14, 1896, she believing her husband to be dead, and then and there being awed and frightened by the clamor of the depositors of said bank, visited the office of her then lawyer, A. D. Weiner, and he

(said Weiner) being advised as to the condition of the affairs of said Kopperl, directed said Amalia Kopperl to then and there make a voluntary deed of assignment of all the property and effects of said Alexander Kopperl, and she, acting under the advice of said Weiner, then made a pretended deed of assignment to one Horace H. Stoddard, Mrs. Kopperl signing said pretended deed of assignment as the agent of said Alexander Kopperl, who was then dead. That at the time she executed and delivered the pretended deed of assignment, she had no authority, either verbally or in writing, to execute or deliver the same, and did not know the contents, nor the force nor efficacy of the same. And that said pretended deed of assignment has never been ratified, sanctioned or approved by said Alexander Kopperl, deceased.

The bill further alleges that said Stoddard immediately attempted to reduce the property of said Alexander Kopperl to possession, and that he (said Stoddard) now claims and seeks to hold said property, consisting of a few hundred dollars, a few notes and checks, the property of said Alexander Kopperl, certain property therein described, and a claim against the insolvent estate of J. I. Kopperl, the son of said Alexander Kopperl, and one of the defendants in error.

That said Stoddard, either as such pretended assignee, or individually, has no valid claim, lien or right to hold any of said property and effects, as aforesaid. That there is property of said Alexander Kopperl, deceased, now in the possession and control of said defendants, A. D. Weiner and Simeon E. Baum (attorneys); that in addition there is a claim for the sum of, to wit, ten thousand dollars, against the defendant, J. I. Kopperl, who, prior to February 14, 1896, made a voluntary deed of assignment to John H. Francis, assignee.

The bill then describes certain real estate, located in Cook county, Illinois, the property of said Alexander Kopperl, and alleges that said property stands in the name of said Kopperl, incumbered by one trust deed to Schreiber,

trustee, and one trust deed to the Title Guarantee & Trust Company, as trustee, said trust deed having been given prior to the filing of said bill of complaint, to secure a pretended and fictitious indebtedness of twenty-three thousand five hundred dollars. That said indebtedness, as complainant is informed and states the fact to be, is not *bona fide*, and that a large part of said indebtedness, secured by said trust deeds, is fictitious and made for the purpose of clouding the title to said property, and preventing complainants and other creditors of said Kopperl from satisfying their said claims out of said property.

The bill further alleges " that said Kopperl died intestate, leaving no will, and leaving as his sole heirs and devisees said Amalia Kopperl and J. I. Kopperl; that no administration of the property, assets and effects of said Alexander Kopperl has been or is now being conducted in the Probate or County Courts of said county or in the probate or any court of any county in the State of Illinois, or in any court or courts whatsoever, but on the contrary, no one is caring for said property or conserving the same for the benefit of your orator and the other creditors of said Alexander Kopperl." And that one of the most valuable assets of said Kopperl's estate is the rent which said Kopperl in his lifetime obtained for said premises, and that no one is now caring for said property or collecting the rents therefrom; and that one of the valuable assets of said Kopperl is the claim against the insolvent estate of said J. I. Kopperl, and that no one is asserting said claim against said estate for the benefit of complainant and the other creditors of said Alexander Kopperl, deceased.

The bill further alleges that said deed of assignment sought to convey to said Stoddard the real estate described in said bill of complaint, and that said conveyance is fraudulent, fictitious and of no force and effect, and that by reason of said pretended deed of assignment said Stoddard now claims to own said property as such assignee in fraud of the rights of the complainant and the other creditors of said Kopperl.

"That said real estate is incumbered by a trust deed to William Schreiber, trustee, and a trust deed to the Title Guarantee & Trust Company, for the purpose of securing a pretended indebtedness of twenty-three thousand five hundred dollars, and that said indebtedness is not in whole or in part *bona fide;* that said indebtedness is fictitious and made for the purpose of clouding the title to said property, and for the purpose of preventing the satisfaction and payment of the claim of complainant and the other creditors of said Kopperl."

The bill further alleges that said property is being rapidly dissipated by attachments already levied and others threatened to be levied, and that said attachments already levied were sued out after the death of said Alexander Kopperl, and therefore void, and that if said real estate is conserved and the rents collected, and the other property of said Kopperl, deceased, cared for and a receiver appointed to take charge of all of said property and to assert the claims of said Alexander Kopperl, deceased, against the estate of said J. I. Kopperl, a considerable sum may be realized for the payment of the claims of complainant and other creditors of said Kopperl, deceased.

The bill then makes defendant the various parties above mentioned, prays for the appointment of a receiver for the purposes mentioned in said bill "and for the purposes of administration upon the whole estate of said Alexander Kopperl, and for the purpose of paying the claims of your orator, and other creditors of said Alexander Kopperl who may become parties to this, your orator's said bill of complaint." That said conveyance to said Stoddard, assignee, be set aside and held for naught, and for other relief.

Upon the filing of the bill an order was entered appointing William C. Malley receiver of all the property, assets and effects of said Alexander Kopperl mentioned in said bill of complaint, and authorizing said receiver to take possession of all the property, assets and effects of Alexander Kopperl, deceased, for the benefit of complainant and the other creditors of said Alexander Kopperl.

Goodman v. Kopperl.

On May 19, 1896, general and special demurrers were filed to said bill of complaint. The only grounds alleged in said demurrers as special grounds for demurrer being " that said complainant has an adequate remedy at law by obtaining the appointment of an administrator to take possession of said chattels and said estate or sue for same and to sell said real estate, and as a further ground they say that the complainant has no judgment and must establish his claim at law or in probate."

On July 10, 1896, after argument, said demurrers were sustained to said bill, and the complainant electing to stand by his bill, the same was dismissed for want of equity, and the order appointing William C. Malley receiver thereupon vacated and held for naught. From which order dismissing said bill for want of equity this writ of error is prosecuted.

MORAN, KRAUS & MAYER, attorneys for plaintiff in error.

ROSENTHAL, KURZ & HIRSCHL and SIMEON E. BAUM, attorneys for defendants in error.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This is a bill filed by a creditor of a decedent, charging the making of fraudulent conveyances by the deceased, the insolvency of his estate, that no letters of administration have been issued thereon, and that in consequence the property left by the deceased is in the hands of persons who are endeavoring to convert the same to their own use, and that such property, by reason of the want of any person authorized to properly care for and administer the same, is likely to be entirely frittered away and lost, so that the creditors of the deceased, to whom such property belongs, will receive nothing as the avails thereof.

Under these allegations it is sought, by the aid of a receiver, to take the administration of the entire estate into a court of chancery, not calling upon, and leaving the Probate Court with nothing to do in the premises.

While it is true that the jurisdiction of the court of chancery over estates of deceased persons has not been taken away by our statute concerning the administration of estates, it is, nevertheless, the case that, primarily, the administration of estates of deceased persons is committed to the Probate Court, and that a court of chancery can not and will not take jurisdiction and so administer, save in extraordinary and unusual cases, even if in any case it will, in the first instance, before there has been any attempt to administer through the agency of the Probate Court, take upon itself the entire task of administration, carrying it on to the end, so that there shall be nothing left for the Probate Court to do.

In High on Receivers, Secs. 706 to 724, the subject of the appointment of receivers over executors and administrators, as well as before the appointment of such, for the preservation of an estate, is considered. Many illustrations are given of the rules by which a court of chancery is guided in attempting to administer upon the estate of a deceased person, or in interfering with an administration already going on; but it is nowhere stated that the court will, in any case, ignore the Probate Court and itself proceed to administer. The same is true of what is said in Kerr on Receivers, pages 28 to 38; and it is stated that the court of chancery will appoint a proper person to protect a testator's estate where circumstances require it, until a legal, personal representative is appointed; but a bill to protect and also to administer the estate is irregular. Overington v. Ward, 34 Beavan, 175.

In Pomeroy's Eq. Jur., Vol. 3, Sec. 3, chapter concerning the administration of estates, page 98, it is said in substance, that in a number of the States of the Union, among them Illinois, the general principle regulating the exercise of all jurisdiction concurrent with that of the Probate Court in the administration of estates, prevails; and that when either court has assumed jurisdiction of a particular case, the other tribunal will not ordinarily interfere.

In the note found upon page 104, as to the probates in

the State of Illinois, it is said, that "the theory is admitted by later as well as earlier cases in this State, that equity retains a general jurisdiction over administrations, concurrent with, but paramount to, that possessed by the Probate Courts, and the only practical question is, when will that jurisdiction be exercised. The earlier decisions allowed its exercise somewhat more freely than is done by the later ones; they seem to have permitted a resort to equity in the first instance instead of to the Probate Court, for the purpose of an accounting and final settlement, without any special ground alleged; and also for the purpose of re-examining and correcting a settlement made by a Probate Court, with which a party was dissatisfied. The more recent cases, while fully admitting the existence of this jurisdiction, have repeatedly declared the rule to be, 'Courts of equity will not exercise jurisdiction over the administration of estates, except in extraordinary cases. Some special reason must be shown why the administration should be taken from the Probate Court.'"

The same work, Vol. 3, Sec. 1332, in treating of the cases in which a receiver may be appointed to take charge of the estate of a decedent, says: "During the litigation concerning the admission of a will to probate, and during the interval before an executor or administrator is appointed, a court of equity has power to appoint a receiver of the personal property, and of the rents and profits of the real estate, where there is any danger of their loss, misuse, or misappropriation. The necessity of such a receiver has been greatly lessened by modern statutes authorizing the Probate Court to appoint an administrator *ad litem*, and enlarging his powers."

The same author in Vol. 1, Sec. 77, in speaking of the jurisdiction of equity in the matter of settling the personal estates of deceased persons, says: "In the American States these matters are all governed by statutes, which determine the nature and regulate the application and distribution of assets by fixed and certain rules, binding alike upon all tribunals. Probate Courts are established for the settlement

of decedents' estates, and all questions arising in the course of administration are decided by them to the practical exclusion of the equity jurisdiction."

Equitable suits growing out of pending administrations are still frequent, but they are brought for some special and partial relief; for the construction of a will; the determination of a controversy arising with respect to a particular legacy; the adjustment of conflicting claims to a particular fund, and the like. It is true that the statutory rules for the settlement of estates are largely based upon the principles which had been settled in equity, and that equitable doctrines are constantly enforced by the courts of probate; but it is no less true that this important head of equity jurisdiction has been greatly restricted, or even practically abandoned, in all the States.

It is urged that this is a creditor's bill, and that in the case of a claim against the estate of a deceased person, where a fraudulent disposition of his estate, or some portion thereof, by the debtor in his lifetime, is alleged, it is not necessary, for the maintenance of a creditor's bill, that the claim shall have been reduced to judgment, or allowed in a Probate Court.

In McDowell v. Cochran, 11 Ill., page 31, the court sustained a bill filed against the administratrix of the estate of Adam Cochran, the estate being alleged in the bill to be insolvent, it appearing that the complainant had obtained judgment, and thereby, as the court said, exhausted his legal remedy; it not being permitted that he should have execution issued against the administratrix. The court said: "Under our statute, an execution can not issue on a judgment against an administrator, but the judgment is to be paid in due course of administration, as all other claims against the estate."

So in Steere v. Hoagland, 39 Ill. 264, certain judgment creditors of the deceased were allowed to file a creditor's bill, seeking to set aside a fraudulent transfer of a stock of goods, made by the decedent in his lifetime, without having had an execution issued and returned no property found. The court in that case did say (but the statement was

unnecessary to a decision of the case, because the complainants were judgment creditors): "When a fund is only accessible to a court of chancery, and can not be reached at law, and where the debtor is deceased, creditors may resort to chancery in the first instance, without having recovered a judgment at law."

In Garvin, Bell & Co. v. Robert Stewart's Heirs, 59 Ill. 229, a creditor filed a bill against the heirs of a deceased partner, the complainant having obtained judgment against the surviving partner; the purpose of the bill being to subject real estate which had descended to the heirs of the deceased, to the payment of a partnership debt, the surviving partner being alleged to be insolvent. A demurrer to the bill was sustained by the Circuit Court, which decree was affirmed by the Supreme Court. In that case the Supreme Court said:

" In this case, however, there is no traversable allegation that there are are no assets or personal property, out of which the debt could be made by administration. The creditor's lien is only a secondary one, depending upon whether there are personal assets. It is not until they are exhausted that the administrator is authorized to apply for leave to sell real estate for the payment of debts. If there are assets, the law has appropriated them to the payment of this and all other debts the testator may have owed, and they should be exhausted by administration before the lien on real estate could be made available.

Again, there is no positive and traversable allegation that there are no other creditors of Stewart's estate. If there are, then plaintiffs in error have no superior claim or lien to theirs. And in case there are other creditors, to entertain this bill would be to transfer the settlement and administration of the estate to a court of equity, while the statute has designated another tribunal and prescribed a different mode for the settlement and distribution of estates, more expeditious and less expensive than in a court of chancery.

There are, however, cases, where there are complicated equities, which might authorize a court of equity to enter-

tain jurisdiction, and having done so, it would retain the case and do complete equity to the parties. But in this case the facts are simple, and we can see no reason for taking the case out of the usual course of administration. If letters of administration should be granted, no reason is perceived why the claim of plaintiffs in error should not be allowed against Stewart's estate, if just and subsisting, or that would prevent the administrator from applying for an order for the sale of this land. Although equitable, the claim is cognizable in the Probate Court."

In the present case it appears from the bill, that there are personal assets of the estate which have not been applied to the payment of debts; the complainant's bill therefore falls directly within the principle enunciated in Steere v. Hoagland.

In Harris v. Douglas, 64 Ill. 466, the court, upon page 469, says:

"A court of equity will not assume jurisdiction except in extraordinary cases where the remedy afforded by the statute is inadequate. It is for the very plain reason that the statute has pointed out a different mode, and the party must pursue the remedy provided by law.

By the provisions of the statute of wills, claims against estates are to be classified, and some are to be paid in full, and others *pro rata*. A claimant can not avoid this statute by resorting to a court of equity. The law is settled, in this State, at least, that a court of equity will not ordinarily assume jurisdiction until the claimant shall have exhibited his claim and had it allowed in the County Court, and then if any special reasons, that may be deemed sufficient, can be assigned why that court can not afford the requisite relief, equity will assist him, but not otherwise." Armstrong v. Cooper, 11 Ill. 561; Freeland, Ex'r, v. Dazy et al., 25 Ill. 296; Heustis v. Johnson, 84 Ill. 61; Crain v. Kennedy, 85 Ill. 340; Duval v. Duval, 153 Ill. 49.

In Wood v. Johnson, 13 Ill. App. 548, the court reiterated its former announcement that a court of chancery will not exercise jurisdiction over the administration of estates except in extraordinary cases.

In Scripps v. King, 103 Ill. 469, the court declares that before a creditor can maintain a bill against an insolvent estate, he must have had his claim properly allowed against the estate, although his bill be to remove a fraudulent conveyance and reach the property so conveyed, to satisfy his demand. The same rule is declared in Winslow v. Leland, 128 Ill. 304.

A party filing a creditor's bill is entitled to priority over such bills subsequently filed.

If the present bill can be maintained, the complainant will be entitled to have the assets of the insolvent estate first applied to the payment of his claim. Subject to certain statutory rights of the family of a deceased person, his personal estate belongs in the first instance to his creditors; certain classes of claims have precedence over others, and his real estate descends to his heirs, their title being subject to be divested for the purpose of satisfying claims of creditors remaining after the exhaustion of the personal estate.

The complainant's interest as a claim upon the estate of the deceased, stands *pro rata* upon a footing equal only to that of the numerous other creditors alluded to in the bill. No reason is shown why this complainant has not heretofore exercised his right as a creditor, and taken out letters of administration upon this estate; nor does there appear to be any obstacle in the way of letters yet being taken out and this estate administered and distributed by the Probate Court in accordance with the statutes of this State.

The decree of the Superior Court dismissing the bill for want of equity is affirmed.