GRACE G. HOUSTON

*v.*

ANN S. MADDUX.

*Opinion filed April 17, 1899.*

1. INSURANCE—*section 19 of act of 1869 construed.* Section 19 of the Insurance act of 1869, (Rev. Stat. 1874, p. 607,) which authorizes a wife to insure her husband's life, but provides that premiums paid with intent to defraud creditors shall, with interest, inure to the benefit of such creditors, includes in its scope a case where the husband voluntarily insures his life for his wife.

2. SAME—*premiums paid by insured when insolvent are in fraud of creditors.* Each payment of a premium by an insolvent upon his life insurance policy in favor of his wife is an unlawful diversion of his property from his creditors, and the amounts so paid, with interest, constitute, under section 19 of the Insurance act of 1869, a trust fund for the benefit of such creditors, subject to the operation of the Statute of Limitations.

3. EQUITY—*simple contract creditor cannot reach insolvent's trust fund in equity.* The holder of a promissory note which has never been allowed against the deceased maker's estate cannot maintain a bill in equity to satisfy his demand out of the trust fund, created by statute, consisting of the amount of premiums paid by the deceased maker on his life insurance while insolvent. (*Scripps* v. *King*, 103 Ill. 469, followed, which overrules *Steere* v. *Hoagland*, 39 Ill. 264.)

4. SAME—*when equitable set-off cannot be enforced.* A simple contract creditor of a deceased person cannot maintain a bill to enjoin a suit at law brought by the debtor's widow against complainant on a separate, personal demand, and to compel the plaintiff to exhibit her demand in equity, in order that complainant may have the amount due on the contract allowed as an equitable set-off, payable out of a trust fund in the widow's hands.

5. SAME—*when filing cross-bill is not an admission of equitable jurisdiction.* Where the original bill lacks equity because of an adequate remedy at law, such defective jurisdiction is not cured by the filing of a cross-bill which seeks such relief only as may be had in an action at law.

*Houston* v. *Maddux,* 73 Ill. App. 203, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This is a bill, filed on December 17, 1894, by the defendant in error, Ann S. Maddux, against the plaintiff in error, Grace G. Houston, to enjoin the prosecution of a suit at law, begun by the plaintiff in error against the defendant in error, and to enforce on the part of the defendant in error an alleged equitable set-off against the claim set up in the suit at law. The bill was demurred to by both general and special demurrer. The demurrer was sustained as to a technical defect in the bill with leave to amend the bill without prejudice to the injunction. The bill was amended, and an answer filed to it as amended. A cross-bill was then filed by the defendant below, the plaintiff in error here, praying for the enforcement of the claim sued upon by her in the action at law. The plaintiff in error, in her answer to the original bill, claimed that the complainant was not entitled to the relief asked for, and prayed that her answer should have the same effect, as if she had demurred to the bill. In her cross-bill, also, the plaintiff in error protested, that the original bill did not give the court jurisdiction to set off any claim of the defendant in error against the claim of the plaintiff in error. The cross-bill was answered by the defendant in error. The cause, being at issue, was referred to a master in chancery to take the testimony, and make a report to the court with his conclusions. The court, in its decree entered on July 17, 1897, approved of the master's report as finally made and decreed substantially in accordance with the prayer of the original bill, enjoining the plaintiff in error from the further prosecution of her suit at law against the defendant in error, allowing the set-off claimed by the defendant in error, and finding a small balance due from the defendant in error to the plaintiff in error after applying the set-off so allowed. An appeal was taken from the decree to the Appellate Court, and was there affirmed. The present writ of error is prosecuted for the purpose of reviewing said judgment of affirmance.

The facts, as set up in the pleadings and shown by the proofs, are substantially as follows:

On August 30, 1894, the plaintiff in error began an action of account against the defendant in error in the superior court of Cook county, claiming that there was due to her $922.44, being $875.57 upon an account stated, and $46.87, costs of hiring an accountant to ascertain the amount due upon the account stated. By amendment the form of the action was changed from account to assumpsit. On September 15, 1894, the plaintiff in error filed her declaration with an affidavit of the amount due. On November 5, 1894, the defendant in error filed a plea of the general issue to said declaration with an affidavit of merits. After the suit in assumpsit was put at issue, and before any judgment was rendered therein, the present bill was filed by the defendant in error enjoining the prosecution of the same.

The original bill alleges, that the defendant thereto, Grace G. Houston, was the widow of John T. Houston, who died intestate in Chicago on August 26, 1892; that, on July 25, 1885, at Chicago, said John T. Houston borrowed of the defendant in error $1000.00 and executed to her his note therefor; that, on November 1, 1889, Houston took up said note and executed, in lieu of the principal and interest unpaid thereon, his note for $1192.00, dated November 1, 1889, payable to the order of the defendant in error one year after date, with interest at the rate of eight per cent per annum; that no payment was ever made upon said last named note by John T. Houston in his lifetime or by any of his heirs or representatives after his decease; that the principal and interest on said note from the day of its date are now due and owing to the complainant. The bill further alleges that, on December 26, 1885, John T. Houston made application to a Pennsylvania life insurance company and had a policy for $5000.00 issued upon his life, payable in the event of his death to his wife, the said Grace G. Houston, who was

the beneficiary named in said policy; that the annual premium on said policy was $189.60, payable on December 26 in each year; that John T. Houston paid seven annual premiums of $189.60 upon said policy between the date thereof and the date of his death; that, when he died, the policy was in force, and soon thereafter the plaintiff in error, the beneficiary therein, collected from the insurance company $5000.00 upon said policy; that, when said policy was issued to John T. Houston and when he paid the first premium thereon, he was insolvent and wholly unable to pay his debts, and thereafter until his death continued to be insolvent. The bill further alleges, that no letters of administration were ever issued upon the estate of John T. Houston by the probate court of Cook county or of any other county; that his estate was hopelessly insolvent; that it would be unavailing for the complainant, the defendant in error, to apply for letters of administration as a creditor, or to file her claim with any administrator, as all the property, of which said John T. Houston died possessed, would not be sufficient to pay his widow's award. The bill charges, that the payments of the premiums upon said insurance by John T. Houston for the benefit of the plaintiff in error were made with intent to defraud the defendant in error, and others of his creditors; that the same were entirely voluntary and without any consideration moving from the plaintiff in error to him; that the plaintiff in error, having received said insurance amounting to $5000.00 upon the death of her husband, John T. Houston, is a trustee for the benefit of the defendant in error, and his other creditors, to an amount equal to the premiums paid by him upon said policy, together with interest at the legal rate upon each premium from the day of its payment to the present day; that in equity the plaintiff in error, Grace G. Houston, should be decreed to pay to defendant in error upon said indebtedness of John T. Houston the amount of premiums so paid in fraud of the rights of defendant in error as a

creditor of the said John T. Houston together with inter-
est thereon. The bill also alleges upon information and
belief, that the plaintiff in error, Grace G. Houston, has
no property which can be reached by legal process, and
that a decree against her would furnish no relief to the
defendant in error; that any demand of the plaintiff in
error against the defendant in error in said action at law
is less in amount than the claim of the defendant in error
to the proceeds of said insurance money; that defendant
in error is unable to avail herself of her claim against the
plaintiff in error as a defense in the nature of a set-off to
said action at law. The bill prays, that the plaintiff in
error may be decreed to exhibit any claim, that she has,
in the court of chancery, and have the same set off against
the claim of the defendant in error; that the plaintiff in
error may be decreed to pay to the defendant in error the
amount of the premiums and interest thereon, so paid as
above stated, so far as will be necessary to satisfy the
debt of the estate of John T. Houston to the defendant
in error, less the amount which may be found owing from
the defendant in error to the plaintiff in error; and also
that said suit at law be enjoined.

The proof shows that the deceased, John T. Houston,
was a brother of the present defendant in error, Ann S.
Maddux; that Ann S. Maddux, who is the wife of one
Thomas Maddux, and Grace G. Houston in the lifetime
of the latter's husband, were partners in certain real es-
tate operations; that after the death of John T. Houston
it was claimed by Mrs. Houston, that Mrs. Maddux was
indebted to her for profits made on real estate sales in
their said business; that an accountant was employed
and an account stated, which showed that Mrs. Maddux
was indebted to Mrs. Houston in the sum of $875.57, and
that the fees due the accountants for their services were
$46.87. The amount of these two items, to-wit, $922.44,
is the amount sued for by Mrs. Houston in her suit at law
against Mrs. Maddux.

The court below, in its decree, held that the premiums of $189.60, each paid by John T. Houston to the insurance company on December 26 in the years 1889, 1890 and 1891, were paid with intent to defraud the defendant in error and the other creditors; and that such payments, having been made within five years before the filing of the present bill, were not barred by the Statute of Limitations. The decree charges the defendant in error with the amounts due from her as found by the accountants, but does not charge her with the fees of the accountants. The decree charges the plaintiff in error with the premiums so paid within five years, together with interest thereon, and also charges the plaintiff in error with $34.37, being interest on $700.00 contributed to said partnership by Mrs. Houston, and repaid to her by Mrs. Maddux prior to July 1, 1894.

WILBUR F. HENDRIX, for plaintiff in error:

A constructive trust is never a reason for chancery to take jurisdiction in the first instance. Rev. Stat. chap. 22, par. 49; *Scripps* v. *King,* 103 Ill. 469; *Dormueil* v. *Ward,* 108 id. 216; *Goodman* v. *Kopperl,* 169 id. 136; 67 Ill. App. 42.

No one claiming to be a creditor of a decedent's estate can be heard to say that the debtor has made a fraudulent conveyance until the alleged creditor exhibits a judgment of a probate court showing that such a claim in fact exists and remains unsatisfied. Rev. Stat. chap. 22, sec. 49; *Scripps* v. *King,* 103 Ill. 469; *Dewey* v. *Eckert,* 62 id. 218; *Goodman* v. *Kopperl,* 169 id. 136; *Dormueil* v. *Ward,* 108 id. 216.

The wife's policy statute (Rev. Stat. chap. 73, sec. 26,) was passed expressly to protect and exempt the widow's life insurance from claims of creditors of her husband, where no actual fraud had existed or no unreasonable insurance premiums paid. *Thompson* v. *Cundiff,* 74 Ky. 567; *Charter Oak* v. *Brant,* 47 Mo. 419; *Central Bank* v. *Hume,* 128 U. S. 195; *Hise* v. *Insurance Co.* 90 Ky. 101; *Pence* v. *Makepeace,* 65 Ind. 345; *Mahoney* v. *James,* 26 S. E. Rep. 384.

A widow may insist that alleged creditors of her husband's estate shall duly present their claims in a probate court for proof, and of such as are established and allowed a statutory classification shall be made. *Dewey* v. *Eckert*, 62 Ill. 218; Rev. Stat. chap. 3, sec. 70; *Hall* v. *Black Bros.* 21 Ill. App. 203.

MATZ, FISHER & BOYDEN, for defendant in error:

The insurance statute (chap. 73, sec. 189,) prescribes that "if a premium of said policy is paid by any person with intent to defraud his creditors, an amount equal to the premium so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the Statute of Limitations."

We contend that under this statute each and every payment of an insurance premium by the insured, within the Statute of Limitations, while he was insolvent, was an unlawful diversion of his property from his creditors, and any creditor whose debt existed at the time of said payments has the right to subject the same to the payment of his indebtedness.

When the cross-demands are of such a nature that if both were recoverable at law the one might be set off against the other, a court of equity may, if it has jurisdiction of the subject matter, enforce the set-off by enjoining proceedings at law. 1 High on Injunctions, 92.

Where a claim or demand is such that it might be sued for in debt or assumpsit, it may be set off in an action on any claim or demand of similar character. *Kingman* v. *Draper*, 144 Ill. App. 577; Rev. Stat. chap. 110, sec. 30.

Where property has been fraudulently conveyed by a person who afterwards dies, such property is not assets in the hands of the administrator for general distribution among all the creditors. The administrator cannot file a bill and reach such property, but a creditor can; and when he obtains a lien by filing a bill and recovers the property he is justly entitled to be rewarded for his supe-

rior diligence, and receive the payment of his debt before
other creditors can come in.   *Cole* v. *Marple,* 98 Ill. 58.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

The original bill, filed in this case, will first be con-
sidered without reference to its alleged character as a
bill to enforce an equitable set-off.   Can the bill be main-
tained aside from any question of set-off?   The bill seeks
in behalf of a simple contract creditor to reach a trust
fund belonging to a deceased insolvent debtor.   The de-
fendant in error alleges, that she is the owner of a note
executed to her by her deceased brother, John T. Hous-
ton.   She further alleges, that John T. Houston took out
a policy of insurance upon his own life for the benefit of
his wife, the plaintiff in error, in the sum of $5000.00, and
that the premiums of $189.60 each, paid upon that policy
during the period of five years before the filing of the
present bill, were so paid with intent to defraud creditors.
Section 19 of an act approved March 26, 1869, entitled
"An act to organize and regulate the business of life in-
surance," provides as follows: "It shall be lawful for any
married woman, by herself and in her own name, or in the
name of any third person, with his assent as her trustee,
to cause to be insured, for her sole use, the life of her
husband, for any definite period or for the term of his
natural life; and in case of her surviving such period or
term, the sum or net amount of the insurance becoming
due and payable by the terms of the insurance, shall be
payable to her, to and for her own use, free from the
claims of the representatives of the husband or of any of
his creditors: *Provided, however,* that if the premium of
such policy is paid by any person with intent to defraud
his creditors, an amount equal to the premium so paid,
with interest thereon, shall inure to the benefit of said
creditors, subject, however, to the Statute of Limita-
tions." (2 Starr & Curtis,—2d ed.—p. 2259). This statute

is in the nature of an exemption law and should be liberally construed. (*Cole*.v. *Marple*, 98 Ill. 58). Hence, it contemplates and includes cases where the husband procures for his wife a policy on his own life. In such case he is presumed to act for her and as her agent. (*Felrath* v. *Schonfield*, 76 Ala. 199). The evidence shows that, when John T. Houston paid the premiums in 1889, 1890 and 1891 upon the policy taken out by him, he was insolvent.

In determining the meaning of the words, "with intent to defraud his creditors," as used in said section 19, the same rule of construction applies, as is applicable in other cases of fraudulent voluntary conveyances. If the conveyance or transfer is voluntary and results in hindering, delaying or defrauding creditors, it is regarded as fraudulent in law without reference to the motive or actual intention of the party making the conveyance or transfer. Every payment of an insurance premium, made by John T. Houston, within the time limited by the statute, while he was insolvent, was an unlawful diversion of his property from his creditors; and the amounts so paid must, under the statute, inure to the benefit of his creditors. (*Marmon* v. *Harwood*, 124 Ill. 104; *Cole* v. *Marple*, 98 id. 58; *Wagner* v. *Koch*, 45 Ill. App. 501).

The case of *Cole* v. *Marple*, 98 Ill. 58, is in many of its features similar to the case at bar. There, a creditor's bill was brought by Marple against the widow of one Cole and two life insurance companies, who had issued a life policy to Cole. Cole had died, and his estate was insolvent. It was there held, that, as Cole was insolvent, all premiums, paid by him on the policy within five years next before the action was brought, with interest thereon from the dates of payment, could be recovered by the creditors under the statute. The case, however, of *Cole* v. *Marple, supra*, differs from the present case in the fact that, there, the creditor, who filed the bill to reach the fund, had had his claim allowed against the estate of Cole. Here, the defendant in error, Mrs. Maddux, did not

179—25

file her claim against the estate of John T. Houston, deceased, nor have it allowed in the probate court. It appears, that no administration was ever taken out upon the estate of John T. Houston. The present bill was filed more than two years after his death. Under the statute, administration could have been taken out upon his estate after the lapse of the time, during which it was allowable for the widow or other relatives to apply for administration. Defendant in error took no steps to have the estate of her deceased brother administered upon.

The question then arises, whether a bill will lie to reach the fund here in controversy, when filed by a creditor holding a simple promissory note, which has never been allowed against the estate of the deceased debtor. In *Steere* v. *Hoagland*, 39 Ill. 264, this court said that, where a fund is only accessible through a court of chancery and cannot be reached at law, and where the debtor is deceased, creditors may resort to chancery in the first instance without having first recovered a judgment at law. Later decisions of the court, however, have taken the ground that, in such cases, the creditor must have his claim allowed against the estate before a bill can be filed to reach such a fund. It is not necessary to issue execution and have the same returned unsatisfied, as is required by the Chancery act in relation to creditors' bills, when the judgment is a claim against the estate of a deceased person, because, under our statutes of wills and judgments and executions, an execution cannot issue against an administrator, so as to reach personal assets. In the case of *Steere* v. *Hoagland, supra,* the cases of *McDowell* v. *Cochran*, 11 Ill. 31, and *Bay* v. *Cook*, 31 id. 336, are referred to, as sustaining the doctrine that an execution is unnecessary where the judgment is against the estate of a deceased person. But, in the cases thus referred to, it appears that judgments were rendered against the estates or, in other words, that the claims were allowed by the probate court.

The case of *Steere* v. *Hoagland, supra,* was substantially overruled in the subsequent case of *Scripps* v. *King,* 103 Ill. 469. In the latter case, a bill was filed by a simple contract creditor to set aside a conveyance made in fraud of creditors by a deceased debtor in his lifetime; and it was there held that, where there has been a fraudulent conveyance to hinder and delay creditors, and the claim has been reduced to judgment so as to become a lien on the property, chancery will afford relief under section 49 of the Chancery act. But it was there said: "When the claim is against an insolvent estate, the creditor must have it properly allowed against the estate before he can remove a fraudulent conveyance to reach the property to satisfy his demand. He, in other words, must exhaust his legal remedies. (See *McDowell* v. *Cochran,* 11 Ill. 31; *Armstrong* v. *Cooper,* id. 560; *VanSyckle* v. *Richardson,* 13 id. 174; *Bay* v. *Cook,* 31 id. 336, and numerous other cases in our Reports). If any proposition can be settled, this is the settled law in this jurisdiction. In this case the demands are simple debts, not reduced to judgments nor allowed against the estate in the probate court, or in any manner a lien on the property. The creditors had the right under the statute to have obtained administration on the estate, and have their claims allowed, and, from the evidence in the record, they could have obtained satisfaction of a considerable portion of their debts, but this they failed to do, and having slept on their legal rights, they are in no position to assert them in a court of equity. The cases cited above are conclusive of this question, and they render the other questions discussed by counsel unimportant in this case." It is a mistake to suppose that the case of *Steere* v. *Hoagland, supra,* was endorsed in *Blair* v. *Illinois Steel Co.* 159 Ill. 350, so far as the right to go into chancery without obtaining judgment is concerned. The *Blair case* approves only that part of the decision in the *Steere case,* which holds that an execution need not be required in case a claim is allowed against an estate, be-

cause an execution cannot issue against an administrator so as to reach personal assets. The *Blair* case does not hold that a judgment is not necessary. Even the claims in the *Steere* case had been reduced to judgment in the Federal court; and the main point decided in that case was, that a judgment in a Federal court cannot be used as the basis of a creditor's bill in a State court. (*Goodman* v. *Kopperl*, 67 Ill. App. 42; *Dilworth* v. *Curts*, 139 Ill. 508).

In *Smith* v. *Goodrich*, 167 Ill. 46, it was held, that the holder of an intestate's note could not maintain an intervening petition to reach a fund realized from the sale of the intestate's real estate in the hands of a master in chancery for distribution, when the claim evidenced by the note had not been allowed by the county court. In *Goodman* v. *Kopperl*, 169 Ill. 136, where the bill was filed by a creditor, whose claim had not been allowed against the estate of a deceased person by the probate court, it was said: "There are no instances, in which resort to a court of equity has been recognized under our later decisions before the claim of the creditor has been allowed against the estate by the probate court. Then, if special reasons exist why that court cannot afford relief, the creditor may call on a court of equity to aid him to secure such relief, but not otherwise." A large number of cases are there referred to sustaining the doctrine announced in this quotation. (See also *Smith* v. *Smith*, 174 Ill. 52).

Inasmuch as the present bill, under the views already presented, cannot be maintained aside from any question of set-off, the further question arises, whether or not the bill can be maintained as one, which seeks to enforce an equitable set-off, notwithstanding the objections to it, when standing alone, which have been above stated. Mrs. Maddux, the defendant in error, filed the original bill herein to enjoin an action of assumpsit, pending in the superior court of Cook county, which had been brought against her by her sister-in-law, Mrs. Houston, the present plaintiff in error. She sought to enjoin the action of

assumpsit, brought against her upon an account stated, in order to set off against the claim, made in such action, her alleged equitable right, as a creditor of Mrs. Houston's deceased husband, to reach the fund in Mrs. Houston's hands, consisting of premiums paid by her husband within the period of the Statute of Limitations while he was insolvent. The note held by her is not a note made by Mrs. Houston, who brings the suit at law, but a note made by the deceased Mr. Houston. A claim against the estate of Mr. Houston cannot be set off against a claim held by Mrs. Houston in her own right. The contention is that Mrs. Houston holds a fund belonging to Mr. Houston's creditors. It is only judgment creditors who can reach this fund. Defendant in error has no judgment, but only a note. For aught that appears, the estate of Mr. Houston may have a good defense to that note if it should be presented to the probate court.

This court has held in a number of cases, that a court of equity will set off an equitable demand against a legal demand. (*Downs* v. *Jackson*, 33 Ill. 464; *Raleigh* v. *Raleigh*, 35 id. 512). But "courts of equity will not enforce a set-off not allowed by law, unless the party seeking it can show some equitable ground for being protected against his adversary's demand. The mere existence of cross-demands is not sufficient." (*Ransom* v. *Samuel*, 1 Craig & Phil. 161; *Downs* v. *Jackson, supra; Raleigh* v. *Raleigh, supra.*)

At first, courts of equity assumed jurisdiction in matters of set-off, because natural equity seemed to require, that one demand should compensate another, and that it was iniquitous to attempt at law to enforce more than the balance. But now courts of equity only exercise this jurisdiction when a legal demand is interposed to an equitable suit; or when an equitable demand cannot be enforced at law and the other party is suing therein; or where the demands are purely legal and the parties seeking the benefit of the statute can show some equitable ground for being protected. (*Tate* v. *Evans*, 54 Ala. 16).

The insolvency of the party, against whom the set-off is claimed, is a ground for the exercise of equitable jurisdiction. (*Gay* v. *Gay*, 10 Paige, 376; *Raleigh* v. *Raleigh*, *supra*). In the case at bar, the plaintiff in error, Mrs. Houston, who commenced the action at law is the party, against whom the set-off is claimed, but no evidence whatever was introduced below to show that Mrs. Houston was insolvent. It is true that the bill alleges that she has no property which can be reached by execution. That allegation, however, if amounting to a charge of insolvency, was not sustained by any testimony. The demands sought to be set off against each other must be connected with each other. In other words, to warrant the interference of equity, there must be circumstances from which it can be inferred that one debt was contracted on the faith of the other. (*Tate* v. *Evans*, *supra;* 2 Story's Eq. Jur. secs. 1436, 1436 *a*, 1437). Here, however, the claim of the plaintiff in error in the suit at law arises out of an account stated in the settlement of partnership transactions, while the claim of the defendant in error arises out of her alleged right to reach a trust fund, consisting of insurance premiums in the hands of the plaintiff in error. The demands were not necessarily connected with each other. No agreement or understanding was shown between the parties, that the one demand should be set off against the other, and there is no equity shown for blending the two matters together, contrary to the agreement of the parties. (*Downs* v. *Jackson*, *supra*).

The demand, which Mrs. Maddux, the defendant in error, seeks to set off against the action at law brought by the plaintiff in error, cannot be said to be such an equitable demand as can be set off against a legal demand. This is true, because the case, as made by the bill of the defendant in error, does not present such an equitable claim as she can enforce in a court of equity. If the claim of Mrs. Maddux, founded upon the note against her brother, had been allowed in the probate

court, then a court of equity would enforce it against the
trust fund sought to be reached.   But, inasmuch as it is
merely a simple contract claim, not reduced to judgment,
a court of equity will not aid the defendant in error in
enforcing it against the fund in the hands of the plaintiff
in error.   The bill here does not present the case of a
complete equitable demand on the part of the defendant
in error.   There must be some intervening equity which
renders the interposition' of a court of equity necessary
for the protection of the demand sought to be set off.
(*Tate* v. *Evans, supra*).   If it be true, that a mere contract
creditor cannot reach such a fund, as that which is here
involved, through a court of equity, then he has not such
an equitable claim as can be made the subject matter of
an equitable set-off.

It is said, however, that the plaintiff in error has
waived her right to object to the jurisdiction of a court
of equity in this case by reason of the fact that she filed
a cross-bill against the defendant in error. It will be ob-
served, however, that the cross-bill asks for no equitable
relief.   In the cross-bill the plaintiff in error merely sets
up her pending suit at law, and the nature of her claim
in that suit, and asks that it be enforced.   The prayer of
the cross-bill is:   "That the said Ann S. Maddux be de-
creed to pay your oratrix the sum of $875.57 with legal
interest thereon from July 1, 1894, and the further sum
of $46.85 for fees paid accountants as aforesaid, together
with all costs suffered by your oratrix in her said action
at law," etc.   It has been held that, when the original
bill is without equity, a cross-bill, founded on matters of
equitable cognizance, will cure the defect so as to give
the court jurisdiction.   But where the cross-bill is merely

defensive in its character, the defective jurisdiction under the original bill is not cured by it. Where the original bill lacks equity because there is an adequate remedy at law, a cross-bill, containing matters of equitable cognizance, may cure the defect, but where the cross-bill only seeks such relief as can be had at law, it does not cure such defect. (3 Ency. of Pl. & Pr. p. 657, and cases in notes; *Sayer* v. *McLean,* 29 Ark. 612; *Wachter* v. *Blowney,* 104 Ill. 610; 1 Beach on Modern Eq. Pr. sec. 425). The objection to the original bill in this case is, that the defendant in error had a remedy at law by obtaining judgment on her note in the probate court. Inasmuch as the cross-bill in the present case seeks only such relief as can be had at law, it does not cure the defect in the original bill as thus indicated.

It is unnecessary to consider or discuss any of the other questions made by counsel as, for the reasons already indicated, we are of the opinion that a court of equity had no jurisdiction to entertain the bill and cross-bill in this case.

Accordingly, the judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the circuit court with directions to dismiss the bill and cross-bill.

*Reversed and remanded.*