EHRHART v. NEW YORK LIFE INS. CO. NEW YORK LIFE INS. CO. v. WHEAT.

No. 892.

District Court, S. D. Illinois, S. D.

July 12, 1929.

Carl N. Weilepp and Robert Vail, both of Decatur, Ill., for Mary Ehrhart.

William J. Carey, of Decatur, Ill., for Lawrence C. Wheat.

Hamlin, Topliff & Cooper, of Chicago, Ill., filed the bill of interpleader.

FITZHENRY, District Judge.

Plaintiff, Mary Ehrhart, sued New York Life Insurance Company in the circuit court of Macon county, Ill., to recover as beneficiary upon a certain life insurance policy of $5,000 upon the life of her deceased husband, George W. Ehrhart. The life insurance policy was dated March 20, 1914. The insured, George W. Ehrhart, died August 14, 1927.

An involuntary petition in bankruptcy was filed against George W. Ehrhart May 19, 1924. The petition was contested, and later, on September 27, 1926, Ehrhart was adjudicated a bankrupt. In October following Lawrence C. Wheat was elected and qualified as trustee of the bankruptcy estate of Ehrhart. The trustee notified the life insurance company under date of January 20, 1927, that he was the duly appointed and qualified trustee in bankruptcy of the insured; that he desired to learn the cash surrender value of the policy of insurance issued upon the life of George W. Ehrhart as of May 19, 1924, the date upon which the petition in bankruptcy was filed. Under date of February 7, 1927, the insurance company notified the trustee, in a letter received by him on or about February 9th, that the cash surrender value of the policy in question on May 19, 1924, was $1,840, but that there was an outstanding loan against it for $482.23 and interest to be deducted. After re-ceiving the ascertained and stated cash surrender value of the policy, the trustee, on or about the 12th of February, 1927, informed the bankrupt of the sum so ascertained and stated of the cash surrender value of the policy in question, and showed the bankrupt the letter from the insurance company. Thereupon the bankrupt informed the trustee that he would, within thirty days of that date, pay to the trustee the sum of the cash surrender value as ascertained and stated so that he might continue to hold the policy free and clear from the claims of his creditors. But the bankrupt failed to pay the amount of the cash surrender value, and had many consultations with the trustee relative thereto, and continued to fail to do so up to the time of his death, August 14, 1927. August 15, 1927, the trustee notified the insurance company that as such trustee he was claiming the full amount of the policy.

September 1, 1927, Mary Ehrhart, the beneficiary named in the policy, sent in her proofs of death of the insured, and demanded that the proceeds of the policy be paid to her. Upon the approval of the proofs of death, there was due the company the sum of $1,212, loaned upon the policy prior thereto, and interest upon the loan in the sum of $49.81. In addition to the face of the policy, there was due and owing by the company the proportionate part of the current year's dividend, $39.69; proportionate part of extra dividend, $55.27; interest on policy premium from September 1 to September 7, 1927, $2.90, making the total amount due upon the policy $5,097.86, from which there should be deducted the amount of the loan and interest due, leaving a balance of $3,836.05.

Upon the removal of the cause, the insurance company filed its plea, seeking affirmative relief in equity, asking that the cause be transferred to the equity docket, and that the plea stand as a bill of interpleader. This was ordered, the amount due was paid into the registry of the court, and the insurance company's obligation upon the policy discharged, and the policy canceled.

In the policy in question, Mary Ehrhart, the wife of the insured, was named as beneficiary, "with the right on the part of the insured to change the beneficiary as hereinafter provided." The policy had a cash surrender value after two full annual premiums had been paid, which it engaged to pay after the deduction of any loans due the company.

It is contended on behalf of the trustee in bankruptcy that, because the insured did not

pay to the trustee in bankruptcy the cash surrender value of the policy as of the date of the filing of the petition in bankruptcy, within thirty days after the amount of the cash surrender value had been ascertained and stated to him by the trustee, and the bankrupt having remained in default thereof until his death, thereby the policy became an asset of the bankruptcy estate, and, upon maturity by the death of the insured, the entire proceeds of the policy became the property of the trustee for the benefit of the creditors.

The widow claims the entire proceeds of the policy belong to her as the beneficiary named, free and clear from any claim on the part of the trustee: First, because, she contends, the policy comes within the Illinois Married Women's Insurance Act of 1869, § 19 (Smith-Hurd Rev. St. 1929, c. 73, § 231), and is therefore exempt; second, that, if it were not exempt, the trustee in bankruptcy could under no circumstances recover more than the cash surrender value of the policy, less the loan due against it, as of the date of the filing of the petition in bankruptcy against the insured.

We will first consider whether or not the policy in question is exempt to the surviving widow. The Illinois statute relied upon is as follows:

"*Rights of Married Women,* § 19. It shall be lawful for any married woman, by herself and in her own name, or in the name of any third person, with his assent as her trustee, to cause to be insured, for her sole use, the life of her husband, for any definite period or for the term of his natural life; and in case of her surviving such period or term, the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of the husband or of any of his creditors: Provided, however, that if the premium of such policy is paid by any person with intent to defraud his creditors, an amount equal to the premium so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the statute of limitations. The amount of the insurance may be made payable, in case of the death of the wife before the period at which it becomes due, to his, her or their children, for their use, as shall be provided in the policy of insurance, and their guardian if under age."

This statute has been before the Supreme Court of Illinois twice. Cole v. Marple, 98 Ill. 58, 38 Am. Rep. 83; Houston v. Maddux, 179 Ill. 377, 53 N. E. 599, 602. In Cole v. Marple, supra, the policy had originally been taken out by the insured for his own use and benefit. He afterwards assigned the policy to his wife. The assignment was accepted and approved by the insurer. Mr. Justice Craig held that, holding the policy as she did, "she substantially complied with the act," and considered that the policy fell within the sphere of the statute. The assignment of the policy, it was held, had the same force and effect as though she had sent it in and procured a new policy in her own right. Justice Craig considered that he was placing a very liberal construction upon the statute in holding that Mrs. Cole in these circumstances had substantially complied with the law, while holding that the act was in the nature of exemption law, but yet it was not one.

The Houston Case, supra, followed the Cole Case in holding that, because it was in the nature of an exemption law it should be liberally construed, and the court said: "Hence it contemplates and includes cases where the husband procures for his wife a policy on his own life. In such case he is presumed to act for her and as her agent."

The only evidence in the record in this case which it can be contended brings the policy in question within the provisions of section 19, supra, is the mere fact that Mary Ehrhart, wife of the insured, is the named beneficiary, and this with the right reserved to the insured to change the beneficiary. If there was anything tending to show affirmatively that the insured in the present policy procured for his wife the policy in question so that it might be held that he was acting as her agent, then the contention of the widow would be meritorious. However, when the Illinois Legislature enacted section 19, supra, a policy such as the one here involved was unknown. At that time life insurance policies were mere contracts in consideration of annual sums paid as premiums for the payment of a fixed sum on the death of the insured. Such contracts have been varied in form since, and policies payable on a period of years so as to become investments and means of saving money are in common use. Most of the policies of the present day have either a stipulated surrender value or an established value for a fixed amount which the companies will loan upon them at any given period. If this were a mere straight life insurance policy, without the investment, surrender, and loan value, we are persuaded the entire proceeds of the policy would go to

the widow in this proceeding, not under the Illinois act, but under the Bankruptcy Act.

The Illinois courts have given a very liberal construction to the Married Women's Insurance Act, and while, of course, we adopt the construction of a state statute placed upon it by the court of last resort of that state, yet we are not constrained to extend it farther by construction than the state courts themselves have done.

In the light of these views, we hold that the proceeds of the policy in question are not controlled by the Married Women's Insurance Act, and therefore not exempt property within the provisions of section 6 of the Bankruptcy Act (11 USCA § 24). Section 70a (11 USCA § 110(a) deals with non-exempt property only.

The cases of In re Young (D. C.) 208 F. 373, 374, and In re Orear (C. C. A.) 189 F. 888, are cited as authorities for holding the policy exempt to Mrs. Ehrhart in this case. Considerable of the opinion in In re Young, supra, is very persuasive to the contrary, and yet the portion of the opinion quoted from In re Orear was language used in construing the Missouri statute. In re Young was an Ohio case. The statute in the Ohio case was as follows:

"A policy of insurance on the life of any person, duly assigned, transferred or made payable to a married woman, or to any person in trust for her or for her benefit, whether such transfer is made by her husband or other person, shall inure to her benefit, and that of her children, independently of her husband or his creditors, or of the person effecting or transferring the policy or his creditors."

The exemption discussion in the Orear Case arose under section 6944 of the Revised Statutes of Missouri 1909, which provided: "Any policy of insurance heretofore or hereafter made by any insurance company on the life of any person, expressed to be for the benefit of the wife of the insured, shall inure to her separate benefit, independently of the creditors, executors and administrators of the husband. * * *"

The discussions in the Young and Orear Cases, supra, concerning the Married Women's Insurance Acts of Ohio and Missouri, are of little assistance in the light of the fact that neither resembles even substantially the Illinois act of 1869.

The rights of the parties to the fund deposited by the insurance company in the registry of the court depend upon a construction of section 70a of the Bankruptcy Act (11 USCA § 110 (a), the material portions of which are as follows:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. When any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

In the enactment of section 70a (11 USCA § 110 (a), Congress recognized that many policies of insurance at the time of bankruptcy might have a very considerable present value which a bankrupt could realize by surrendering his policy to the company. We think it was the latter sum that the act intended to secure to the creditors by requiring its payment to the trustee as a condition to keeping the policy alive. Congress intended that, when that sum was realized to the estate, the bankrupt should be permitted to retain the policy, which, because of advance in years or declining health, it might be impossible for him to replace. Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564–568, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148.

The claim of the trustee to the entire fund is based upon the reasoning that, because the insured did not pay to the trustee the amount of the cash surrender value, within thirty days after the cash surrender value had been ascertained and stated and demand had been made therefor, therefore the ownership and enjoyment of the policy fell within the closing phrase of subsection 5 of section 70a, 11

USCA § 110 (a) (5): "Otherwise the policy shall pass to the trustee as assets."

By continuing the payments of the premiums, it is contended inferentially that the trustee might await the maturity of the policy. We do not believe that, in the enactment of the proviso of the statute, Congress had in mind authorizing the trustee in bankruptcy to make payment of premiums, change the beneficiary, and await the maturity of the policy. Burlingham v. Crouse, supra; Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 569, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154. In the latter case the Supreme Court said:

"We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition. And it is as of that date that the surrender value of the insurance policies mentioned in § 70a should be ascertained."

In that case the bankrupt committed suicide before the adjudication, and the trustee in Bankruptcy was claiming the face of the policy. The court said:

"The subsequent suicide of the bankrupt before the adjudication was an unlooked-for circumstance which does not change the result in the light of the construction which we give the statute."

As we construe section 70a, we believe it was the intention of Congress to give to the bankrupt who had an insurance policy upon his life, having a cash surrender value, two options: First, to pay to the trustee the cash surrender value of his policy at the time of the filing of the petition and hold his policy free from the claims of creditors; or, second, to surrender the policy to the trustee so that he might collect from the insurance company its cash surrender value, which, of course, would involve cancellation and destruction of the policy.

In the present case, there was unexplained delay on the part of the bankrupt to pay the cash surrender value to the trustee, as he had indicated his desire to do, and a corresponding delay by the trustee in enforcing the collection of the surrender value. Pending the delay, the policy was matured by the death of the insured. We do not believe that the maturity of the policy obliterated the surrender value of the policy as an asset of the bankruptcy estate; on the contrary, his delay of enforced collection inured to the benefit of the named beneficiary, for, had there been an enforced collection of the surrender value by the trustee, there would have been no insurance in force on the life of the bankrupt at the time of his death.

On behalf of the trustee, the case of Partridge v. Andrews (C. C. A.) 191 F. 325, 41 L. R. A. (N. S.) 123, is cited and relied upon. This case was overruled. 228 U. S. 479, 33 S. Ct. 570, 57 L. Ed. 929. There is also cited Van Kirk v. Vermont Slab Co. et al. (D. C.) 140 F. 38, to sustain the claim that the proceeds of the policy should be paid to the trustee. In so far as that case contains expressions susceptible of the construction relied upon, it is clearly in conflict with Burlingham v. Crouse, supra; Everett v. Judson, supra; Partridge v. Andrews, supra; Frederick v. Fidelity Mutual Life Ins. Co., 256 U. S. 395, 41 S. Ct. 503, 65 L. Ed. 1009; Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143.

The cash surrender value of the policy at the date of the filing of the petition is the asset which goes to the trustee in bankruptcy; and, upon the failure of the bankrupt to pay the cash surrender value to the trustee, he is given full power to surrender the policy for cancellation and collection of that amount.

We therefore hold that there should be paid to the trustee in bankruptcy the cash surrender value of the policy in question as of May 19, 1924, the sum of $1,840, less the outstanding loan against it in the sum of $482.23, with interest due to that time; the remainder of the fund, $3,836.05, paid into the registry of the court, shall be paid to Mary Ehrhart, after deducting the costs and commissions allowed by law.

A decree may be prepared and submitted in harmony with these views.